**MARK DUNNING INDUSTRIES, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant,**

and

**Si–Nor, Inc., Defendant–Intervenor.**

No. 03–465C.

United States Court of Federal Claims.

Filed Under Seal: Aug. 1, 2003.

Reissued: Aug. 21, 2003 [1].

---

1. This opinion was originally filed under seal on August 1, 2003 pursuant to this Court's March 5, 2003 protective order. The parties were given an opportunity to advise the Court regarding any privileged and/or protected portions of this opin-ion that should be redacted prior to publication. None of the parties requested any redactions. Therefore, this opinion is being filed in the same form as it was originally.

Karl Frederick Dix, Smith, Currie & Hancock LLP, Washington, D.C., for plaintiff.

Michael N. O'Connell, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom were Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, and Robert E. Kirschman, Jr., Assistant Director, for defendant. Major Paul Salussolia, Army Litigation Division, of counsel.

Karen D. Powell, Petrillo & Powell, PLLC, Washington, D.C., with whom was Joseph J. Petrillo, Petrillo & Powell, PLLC, for defendant-intervenor.

### OPINION

MARGOLIS, Senior Judge.

This post-award bid protest brought by the plaintiff, Mark Dunning Industries, Inc., against the United States is before the Court on plaintiff's motion for summary judgment and defendant and defendant-intervenor's cross-motions for summary judgment upon the administrative record. Plaintiff asserts that a contract award to defendant-intervenor, Si–Nor, Inc. ("Si–Nor"), was improper because Si–Nor received a 10% price evaluation preference based on Si–Nor's Small Business Administration ("SBA") status as a business located in a historically underutilized business zone ("HUBZone"), and that Si–Nor did not meet the statutory requirements for HUBZone status. Plaintiff argues further that it submitted a timely SBA pro-

test regarding Si–Nor's HUBZone status to the contracting officer, but that SBA never acted on the protest because it was not forwarded to the SBA by the contracting officer. Plaintiff contends that if the SBA had properly responded to plaintiff's protest of Si–Nor's HUBZone status, SBA would have upheld the protest, and thus, plaintiff would have been awarded the contract. After careful consideration, the Court remands this matter to the SBA for its determination as to whether SBA would have upheld plaintiff's protest had it been timely received by the SBA.

### FACTS

On August 23, 2002, the Army issued Invitation for Bid No. DABT10–02–B–0009 for trash collection services at Fort Benning, Georgia. The solicitation provided that bidders certified by the SBA as small business concerns located in a HUBZone would receive a 10% price evaluation preference, pursuant to 48 C.F.R. §§ 19.1305 and 52.219–4.[2]

The bid opening for the solicitation was held on October 11, 2002. Plaintiff, the incumbent contractor, submitted the lowest responsive bid. However, Si–Nor, another bidder in the subject procurement, and the defendant-intervenor in this action, was identified as the putative contract awardee based on Si–Nor's status as an SBA-certified HUBZone business.

Plaintiff alleges that SBA's certification of Si–Nor as a HUBZone business was based on Si–Nor's false representation that its principal place of business was located on West Compton Boulevard in Gardena, California, which is a HUBZone location. Plaintiff has submitted documentation that plaintiff asserts is evidence that Si–Nor's principal place of business is not at the Gardena location. Additionally, Si–Nor has submitted a video that purportedly depicts the Gardena address as merely a trailer deposited at a trash processing facility.

---

2. In 1997, Congress passed the Historically Underutilized Business Zone Act, Pub.L. No. 105–135, §§ 601–607, 111 Stat. 2592, 2627–36 (codified at 15 U.S.C. § 657a), which established the HUBZone program. The program's purpose "is to a provide Federal contracting assistance for qualified small business concerns located in historically underutilized business zones, in an effort to increase employment opportunities, investment, and economic development in those areas." 48 C.F.R. § 19.1301(b).

Defendant and Si–Nor both counter, however, that Si–Nor's HUBZone certification was based on its HUBZone application where it stated that its "principal office" was located on Bandini Boulevard, in Vernon, California, which both Defendant and Si–Nor contend is located in a HUBZone. Defendant and Si–Nor assert that, although Si–Nor operates a refuse transfer station on West Compton Boulevard in Gardena, California, it has never represented to SBA that this address serves as the basis for Si–Nor's HUBZone status. Defendant and Si–Nor assert further that the Gardena address is not even located in a HUBZone.

On October 14, 2003, Phillip Makowski, plaintiff's controller, telephoned Charles Carroll, the contract specialist in the subject procurement. According to Carroll's affidavit, Makowski claimed that he had evidence indicating that Si–Nor was not eligible for the 10% HUBZone price evaluation preference. On October 17, 2002, Makowski faxed a letter, dated October 16, 2002, along with documents printed from the SBA website, to Carroll reasserting Makowski's contention that Si–Nor was not located in a HUBZone:

October 16, 2002

Mr. Rodney Carroll

Directorate of Contracting

Bldg. 6, Meloy Hall

Ft. Benning, GA

RE: HUB–Zone, Small Business Advantage

Dear Rodney,

I enjoyed meeting you last Friday at the bid opening; it's always easier to work with someone when you have met him in person. When we were leaving you mentioned that the other bidders may be entitled to a 10% bid advantage based on Small business and or HUB Zone status, and of course we would be upset about it, as we were the apparent low bidder. I did some preliminary investigation and have found a couple of items, which may or may not have any affect [sic] on the bid/award process, but I have followed this letter with copies for you to review.

Selrico Services claims HUB Zone certification and they are located in a HUB Zone, but their D & B Report shows that their income is to [sic] large to be Small Business which is a requirement for HUB Zone certification. Si–Nor, Inc. also claims HUB Zone certification but according to the SBA HUB Zone locator their address IS NOT in a HUB Zone.

I ask that you verify all certifications before making any determinations and applying any bid advantages. If you have any questions concerning this, please call Mark or myself. Thanks.

Sincerely,

MARK DUNNING INDUSTRIES, INC.

[signed]

Phil Makowski

Controller

Pl.'s Mot. for Summ. J., Ex. 1.

Carroll did not forward this letter to the SBA. In his declaration, however, Carroll states that he had 36 telephone conversations with various SBA officials regarding the subject contract, and that on one occasion or more he asked them to verify Si–Nor's HUBZone eligibility.

On October 25, 2002, George Carbonic, the contracting officer for the subject procurement, submitted to SBA a protest regarding Si–Nor's size and his concern that Si–Nor's Rialto, California address-the address listed on its bid-was not located in a HUBZone. On October 31, 2002, the SBA issued a letter denying Carbonic's protest, concluding that Si–Nor met the size requirement for a HUBZone business. The SBA's letter did not, however, address Carbonic's concern that Si–Nor's listed address was not in a HUBZone.

On November 13, 2002, plaintiff sent a letter to Carroll in which plaintiff reasserted its contention that Si–Nor's principal office was not located in a HUBZone and that, therefore, Si–Nor was not a proper HUBZone business. Along with the letter, plaintiff provided documents as evidence to support its contention. On November 14, 2002, Carroll faxed plaintiff's November 13, 2002 letter and accompanying documents to the SBA. On November 21, 2002, the SBA responded to plaintiff's November 13, 2002 letter, dismissing plaintiff's protest of Si–

Nor's HUBZone status as untimely. In its response, however, the SBA stated that it conducts program examinations of HUBZone certified businesses on an ongoing basis, and that it had requested a program examination of Si–Nor. Plaintiff did not appeal the dismissal of its protest through the SBA administrative appellate process.

On November 25, 2002, David Caulfield, the SBA's area director for the HUBZone program, sent an e-mail to Carroll confirming that Si–Nor continued to meet the eligibility criteria for the HUBZone program and was, therefore, properly on SBA's list of qualified HUBZone businesses. The e-mail referenced Si–Nor's Vernon, California address.

The Army awarded the contract under the subject solicitation to Si–Nor on December 10, 2002. According to Carroll, plaintiff's contract was originally set to expire at the end of November 2002, but was extended twice—first, to February 1, 2003, then to March 1, 2003–because Si–Nor had been waiting for the pending protests to be resolved and, consequently, had delayed its mobilization process in preparation for its contract performance. Carroll asserts that the purpose of plaintiff's contract extensions was to accommodate Si–Nor's mobilization and to facilitate the transition to the new contractor, not to allow time for any action from the SBA expected to impact the contract award to Si–Nor.

On December 17, 2002, the SBA sent a letter to plaintiff stating that SBA conducted a program examination, including an on-site investigation, of Si–Nor's HUBZone status, and that SBA determined that Si–Nor continued to be eligible for HUBZone status. In response, plaintiff sent a letter to SBA on January 3, 2003, asserting plaintiff's belief that SBA had not considered the evidence plaintiff submitted in conducting the program examination of Si–Nor's HUBZone status.

According to an affidavit filed by Stephen Lingenfelter, an attorney of counsel to the law firm representing plaintiff, in January 2003, Lingenfelter received a telephone from Denise Benjamin, an attorney with SBA's Office of General Counsel, regarding plaintiff's January 3, 2003 letter. Benjamin advised Lingenfelter that the SBA had decided to conduct a program re-evaluation of Si–Nor's HUBZone eligibility, as plaintiff requested. Benjamin would not, however, commit to any specific time frame during which SBA would conduct the re-evaluation.

On January 3, 2003, U.S. Senator Richard Shelby sent a letter to SBA on plaintiff's behalf regarding SBA's evaluation of Si–Nor's HUBZone status. In response, SBA sent a letter to Senator Shelby stating that SBA was in the process of obtaining documentation from Si–Nor to enable SBA to verify Si–Nor's HUBZone status, and that the process was expected to be completed by the end of February 2003. However, Michael McHale, the SBA Associate Administrator for the HUBZone program, states in his affidavit that at no time did he or any of his staff represent to plaintiff or anyone else that SBA's further consideration of Si–Nor's eligibility could be a basis for delaying award or performance of Si–Nor's contract, or that the results any such examination would require any prior award to be vacated.

According to Mark Dunning, president and owner of plaintiff corporation, at some time during the later half of February 2003, he received a telephone call from the contracting officer. The contracting officer informed Dunning that the SBA had told the contracting officer that it would not complete the program examination of Si–Nor any time soon, and that the SBA had told him further that SBA's decision regarding Si–Nor would not change in any event. The contracting officer advised Dunning that plaintiff's contract would not be extended past the end of February 2003.

On February 27, 2003, plaintiff filed its bid protest in this Court, along with its motion for a temporary restraining order and preliminary injunction enjoining the Army from awarding the trash collection contract to Si–Nor, pending SBA's completion of its re-evaluation of Si–Nor's HUBZone status. On March 21, 2003, the Court entered an order denying plaintiff's motion for a temporary restraining order. In that order, however, the Court noted that the Government had indicated that SBA was conducting another

program examination of Si–Nor's HUBZone status, and requested the SBA to complete the program examination by March 28, 2003. The Court also directed the SBA, in conducting its examination, to determine whether Si–Nor was eligible for HUBZone status during the period of August 2002 until October 2002, and to consider all information that plaintiff had submitted that, in SBA's judgment, was relevant.

On March 31, 2003, defendant filed in this Court SBA's March 28, 2003 letter to Si–Nor, "Notification of Proposed De-certification from HUBZone Program," which summarized the results of SBA's program examination of Si–Nor's HUBZone status. SBA's examination did not address plaintiff's contention that Si–Nor's principal office was not located in a HUBZone, but determined that Si–Nor failed to meet another requirement for HUBZone status, that "[a]t least 35% of the concern's employees must reside in a HUBZone." 13 C.F.R. § 126.200(b). SBA also determined that Si–Nor did not meet the 35% employment requirement during the period of August 1, 2002 and October 16, 2002, or as of March 7, 2003.

On April 7, 2003, Si–Nor responded to the SBA's March 28, 2003 letter, disputing on various factual grounds, SBA's finding that Si–Nor did not meet the 35% employment requirement for HUBZone status. Si–Nor also argued that SBA's interpretation of 13 C.F.R. § 126.200(b) was overly restrictive. Specifically, Si–Nor pointed to the requirement that the small business concern "must certify that it will attempt to maintain this percentage during the performance of any HUBZone contract it receives." 13 C.F.R. § 126.200(b). After considering Si–Nor's April 7, 2003 response to SBA's March 28, 2003 letter, and additional documents submitted by Si–Nor on April 14, 2003, SBA sent a letter to Si–Nor on May 2, 2003 reaffirming its finding that Si–Nor did not meet the 35% employment requirement for HUBZone status during the period of August 1, 2002 to October 16, 2002.

## DISCUSSION

This case is presently before the Court on plaintiff's motion for summary judgment and defendant and defendant-intervenor's cross-motions for judgment upon the administrative record.

### 1. Jurisdiction and Standard of Review

This Court has jurisdiction to review post-award bid protests pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1). *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1330 (Fed.Cir.2001). To afford relief in bid protest cases, this Court "may award any relief that [it] considers proper, including declaratory and injunctive relief." 28 U.S.C. § 1491(b)(2). The Court also has "the power to remand appropriate matters to any administrative or executive body or official," including the SBA, "with such direction as it may deem proper and just." *Id.* at § 1491(a)(2); *Y.S.K. Const. Co., Inc. v. United States,* 30 Fed.Cl. 449, 459 (1994).

### 2. Bid Protest Standard

To succeed in a bid protest action, "[a] protestor must prove by a preponderance of the evidence the arbitrary and capricious nature of the Government's actions or the violation of an applicable procurement regulation." *Tech Sys., Inc. v. United States,* 50 Fed.Cl. 216, 222 (2001). "The arbitrary and capricious standard is highly deferential and assumes the validity of agency action." *CRC Marine Serv., Inc. v. United States,* 41 Fed. Cl. 66, 83 (1998) (citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). Under that standard, to prevail in a bid protest, a frustrated bidder must "establish that (1) the Government officials involved in the procurement process were without a rational and reasonable basis for their decision, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes and regulations." *Ellsworth Assoc's., Inc. v. United States,* 45 Fed.Cl. 388, 392 (1999); *see also United Payors & United Providers Health Serv., Inc. v. United States,* 55 Fed. Cl. 323, 328 (2003).

### A. Violation of Applicable Statutes and Regulation

Plaintiff contends that the procurement procedure used with regard to this contract

involved a clear and prejudicial violation of applicable statutes and regulations. In particular, plaintiff claims that the contracting officer failed to follow regulations concerning the procedure to be followed after a contractor protests the HUBZone status of an apparent successful offeror. Defendant and defendant-intervenor maintain, however, that those regulations were never applicable in this case because plaintiff failed to file a timely status protest.

## B. The October 17, 2002 Fax was a HUBZone Status Protest

Plaintiff maintains that Makowski's letter, which was dated October 16, 2002 and faxed on October 17, 2002 to Rodney Carroll, a contracting specialist assigned to this procurement, qualified as a status protest, and as such, the contracting officer was required to forward it to the SBA. To file a HUBZone status protest, "[a]n interested party other than a contracting officer or SBA must submit its written protest to the contracting officer." 13 C.F.R. § 126.801(c)(1). This protest "must be in writing and state all specific grounds for the protest." 13 C.F.R. § 126.801(b). "Protestors may deliver their protests in person, by facsimile, by express delivery service, or by U.S. mail." 13 C.F.R. § 126.801(c)(3). The protest must be submitted "by close of business on the fifth business day after bid opening" in sealed bid acquisitions; otherwise, it will be deemed untimely. 13 C.F.R. § 126.801(d). After such a document has been filed, "[t]he contracting officer must forward [it] to the SBA ..., notwithstanding whether he or she believes it is sufficiently specific or timely." 13 C.F.R.

§ 126.801(e). Plaintiff argues that the fax qualified as a protest because plaintiff was an interested party, the fax was in writing, the fax stated specific grounds for the protest, and plaintiff sent the fax to the contracting officer[3] within the five-day period imposed by 13 C.F.R. § 126.801(d). Defendant, on the other hand, contends that the fax did not qualify as a status protest, and therefore, the contracting officer was not required to forward it to the SBA.

■ First, defendant argues that the fax did not qualify as a protest because it did not identify itself as such. The regulations, however, contain no requirement that the protest must identify itself as such to be so considered. The applicable provision of the regulation provides only that "[p]rotests must be in writing and state all specific grounds for the protest. A protest merely asserting that the protested concern is not a qualified HUBZone SBC, without setting forth specific facts or allegations, is insufficient." 13 C.F.R. § 126.801(b). The General Accounting Office ("GAO") stated, in *Mammoth Firewood Co.*, 1986 WL 63971 (Comp.Gen. Sept.4, 1986), that "a letter does not have to state explicitly that it is intended as a protest for it to be so considered."[4] *See also Mackay Communications*, 1990 WL 277976 (Comp.Gen. Apr.25, 1990); *Chesapeake & Potomac Tel. Co.*, 1987 WL 101397, at *2 (Comp.Gen. Feb.5, 1987). This Court finds the GAO's determination to be persuasive and holds that a protest does not have to identify itself as such to be valid.

■ Second, defendant contends that the fax could not be a protest because the fax "did not object to anything." Def.'s Reply to

3. Although the fax was submitted to a contracting specialist assigned to the case and not to the contracting officer as required by 13 C.F.R. § 126.801(c), the term "contracting officer" is defined to include "certain authorized representatives of the contracting officer acting within the limits of their authority as delegated by the contracting officer." 48 C.F.R. § 2.101. In this instance, the contracting specialist: (1) was designated in the solicitation as the person to whom offerors should direct inquiries, (2) conducted the bid opening, and (3) worked directly for the contracting officer at the Directorate of Contracting. Given how closely the contracting specialist worked with the contracting officer on the procurement, and how the solicitation directed that any protests be addressed to the "Directorate of Contracting," this Court finds that the contracting specialist was an authorized delegate of the contracting officer for the purposes of receiving a protest with regard to this procurement. Therefore, submitting a protest to the contracting specialist was the same as submitting a protest to the contracting officer.

4. Although decisions of the Comptroller General are not binding on this Court, "the court may accord deference to them in recognition of the expertise and role of the General Accounting Office in the resolution of contested procurement decisions." *Computer Scis. Corp. v. United States*, 51 Fed.Cl. 297, 308 n. 14 (2002).

Pl.'s Cross–Mot. for Summ. J. 2. The GAO decisions prove helpful with regard to interpreting what is required to be considered a protest and explain that "[a]t a minimum, the intent to protest must be conveyed by an expression of dissatisfaction and a request for corrective action." *Mammoth Firewood Co.,* 1986 WL 63971; *see also Mackay Communications,* 1990 WL 277976; *Chesapeake & Potomac Tel. Co.,* 1987 WL 101397, at *2. Therefore, the issue raised by defendant's second argument is whether there was "an expression of dissatisfaction." In the October 17, 2002 fax, plaintiff complained that "it would be upset" if it were determined that Si–Nor was eligible for the HUBZone advantage. Pl.'s Mot. for Summ. J., Ex. 1. Plaintiff then cited to, and attached, some evidence that it had found that indicated that Si–Nor may not be HUBZone qualified and stated that the evidence "may or may not have any affect [sic] on the bid/award process." *Id.* Plaintiff argued that Si–Nor may not be eligible for HUBZone status because, "according to the SBA HUB Zone locator their address IS NOT in a HUB Zone." *Id.* The Court finds this language sufficiently conveyed an expression of dissatisfaction with Si–Nor's HUBZone status.

■ Third, defendant asserts that the fax could not have been a protest because it did not ask for corrective action. The fax, however, did request that the contracting officer "verify all certifications before making any determinations and applying any bid advantages." *Id.* Defendant argues that plaintiff simply wanted the contracting officer to plug Si–Nor's address into the HUBZone locator to see for itself that the address was not in the HUBZone. The term "verify," however, is not so specific as for the contracting officer to necessarily conclude that plugging in the address was all that was being requested. Plaintiff was requesting that the contracting officer make sure that Si–Nor was actually qualified for the certification. This was plaintiff's request for corrective action by the contracting officer.

■ Fourth, defendant argues that the October 17, 2002 fax was not a protest that the contracting officer was required to forward to the SBA because it "did not state

all of the specific grounds for the protest." Def.'s Mot. for J. upon the Admin. R. 22. The regulations, however, quite clearly require the contracting officer to forward the protest to the SBA *"notwithstanding whether he or she believes it is sufficiently specific."* 13 C.F.R. §§ 126.801(e) (emphasis added). It was not the contracting officer's responsibility to determine whether the October 17, 2002 fax was sufficiently specific; the contracting officer was to forward it even if he believed that it was not specific enough to be valid. The fax qualified as a status protest, and therefore, the contracting officer acted in violation of the regulations by failing to forward the protest to the SBA.

### C. Plaintiff is Not Precluded from Asserting that Fax Was a Status Protest

■ Next, defendant maintains that, even if the fax was otherwise a status protest, plaintiff should be precluded from so asserting because the plaintiff did not intend for the October 17, 2002 fax to be a protest. To support that argument, defendant points to several times when plaintiff has expressed that it did not intend the fax to be a status protest and that it did not believe that it ever filed a valid status protest. As defendant notes, these admissions were made both before and after the contract award. In fact, plaintiff continued to make assertions of this type even after this case was filed in this Court. Verified Compl. for T.R.O. & Prelim. Inj. 3 ¶ 11. Defendant, however, has neglected to provide any authority to support its contention that intent is necessary to create a valid status protest. Therefore, the Court looks again to the GAO opinions for guidance. In both *Mackay Communications* and *Mammoth Firewood Co.,* the protestor had specifically stated in its letter that the letter was not to be considered a formal protest, but each time the GAO found that the protestor's intent was not necessary to create a protest. *Mackay Communications,* 1990 WL 277976 ("Even though [plaintiff] claims it never intended to lodge an agency-level protest, [its letter] ... constituted an initial protest"); *Mammoth Firewood Co.,* 1986 WL 63971 ("While, in its letter [plaintiff] states it

is withholding a 'formal protest' pending the agency's review of its complaint, ... we find the letter was an agency-level protest"). The Court finds those decisions to be persuasive and, therefore, holds that plaintiff's subjective intent is irrelevant with regard to the question of whether the contracting officer should have treated it as such.

■ In a related argument, defendant asserts that because plaintiff stated in the Verified Complaint that it had not filed a valid protest, plaintiff cannot now retreat from that admission. The cases to which defendant cites to support that argument, however, are inapposite to the case at hand. In each of those cases, a party was trying to change its position much later in the process than in the instant case, and therefore, it was determined that the trial judge had the discretion to accept the earlier concessions as binding admissions. *Missouri Hous. Dev. Comm'n v. Brice,* 919 F.2d 1306, 1314–15 (8th Cir.1990) (affirming the trial judge's decision to deny defendant's motion to amend complaint where the motion to amend was not filed until after plaintiff's summary judgment motion was granted); *Ferguson v. Neighborhood Hous. Servs. of Cleveland, Inc.,* 780 F.2d 549, 550 (6th Cir.1986) (affirming trial judge's decision to deny plaintiff's motion to amend complaint where the motion to amend was not filed until "shortly before the trial was scheduled to begin"); *Lofton v. Kearney,* 157 F.Supp.2d 1372 (S.D.Fla.2001) (holding that the defendant in that case was precluded from arguing a point that it had conceded throughout the previous two years of litigation). In the instant case, although plaintiff initially stated that it had not filed a valid protest, plaintiff corrected that assertion early in this case. Therefore, unlike the cited cases, the opposing parties in the instant case are not prejudiced by plaintiff's failure to assert earlier that the October 17, 2002 fax was a status protest, and therefore, plaintiff is not precluded from so asserting.

■ Defendant-intervenor also argues that plaintiff should be precluded from asserting that the fax constituted a protest. Si–Nor argues that, even if the fax was a status protest, plaintiff abandoned that protest, and therefore, should not be able to rely on it. First, Si–Nor points to 13 C.F.R. § 126.803(a), an SBA regulation that mandates that, upon receipt of a protest, the SBA must immediately notify the contracting officer and protestor that the protest was received and inform them whether the SBA will process or dismiss the protest. 13 C.F.R. § 126.803(a). As the contracting officer did not forward the protest to the SBA in this case, the SBA did not send out such a notification. Si–Nor argues that, therefore, plaintiff knew, or should have known, that the contracting officer had not forwarded the protest. According to Si–Nor, this triggered a duty on plaintiff's part to take some sort of action. This interpretation of the regulation is incorrect. Section 126.803(a) creates a duty for the SBA; it does not create a duty for the protestor. 13 C.F.R. § 126.803(a). Plaintiff was under no duty to acknowledge the receipt, or lack thereof, of the SBA's notice, and therefore, plaintiff's lack of action does not preclude it from relying on the status protest to support this action.

Second, Si–Nor maintains that, if the fax was a protest, plaintiff abandoned it with its actions relating to its November 13, 2002 protest. On November 13, 2002, plaintiff filed an official status protest. As that was the first status protest that had been forwarded to the SBA, and the SBA did not know of any earlier protest, the SBA correctly dismissed the November 13, 2002 protest as untimely. Plaintiff did not contest that determination even though it had an opportunity to do so. Si–Nor argues that, because plaintiff did not mention its October 17, 2002 protest to the SBA after the denial of the November protest, plaintiff abandoned the October 17, 2002 protest, and thus should not get the benefit of it at this point.[5] This

**5.** Additionally, Si–Nor contends that the facts of *North Carolina Div. of Servs. for the Blind v. United States,* 53 Fed.Cl. 147 (2002), are similar enough to those in this case that the Court should follow the reasoning used in that case. The plaintiff in *North Carolina Div. of Servs. for*

*the Blind,* 53 Fed.Cl. at 164–65, however, was arguing that the contracting officer had incorrectly denied an extension to submit a proposal after the contracting officer misled plaintiff into believing that it could not file a proposal. The Court, in that case, determined that the plaintiff

reasoning is flawed. As discussed above, plaintiff was not required to act further after sending the October 17, 2002 protest to the contracting officer. The contracting officer was to forward the protest to the SBA. The SBA was to act on that protest. As the contracting officer did not forward the protest, the SBA never got the opportunity to act on it. SBA's denial very clearly limited it to the "protest ... dated November 13, 2002, and received on November 14, 2002." Pl.'s Mot. for Summ. J., Ex. 4. It had no effect on the October 17, 2002 protest. Therefore, this Court finds that plaintiff's actions relating to that protest did not cause it to abandon the October 17, 2002 protest. Thus, the contracting officer's failure to forward the fax to the SBA was a violation of applicable law.

### 3. Requirement of Prejudice

A protester's showing that a contracting officer's award decision was arbitrary and capricious, or that it was in violation of applicable law, is not sufficient by itself to set aside an award. The protester must also show that it was prejudiced by the error in the procurement process. *Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1367 (Fed.Cir.1999) (citing *Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1581 (Fed.Cir. 1996)). "To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract." *Data Gen. Corp. v. Johnson,* 78 F.3d 1556, 1562 (Fed.Cir.1996). "Rather, the protester must show 'that there was a substantial chance it would have received the contract award but for that error.'" *Alfa Laval Separation, Inc.,* 175 F.3d at 1367 (quoting *Statistica,* 102 F.3d at 1582).

Plaintiff argues that this issue is very simple-that the outcome of the program examination recently conducted by the SBA should be applied to the contract at issue. To support that contention, however, plaintiff relies only on case law that deals with size protests. Size protests and program examinations are very different creatures, *compare* 13 C.F.R.

§§ 121.1001—121.1010 *with* 13 C.F.R. §§ 126.400—126.405, and the interpretations of their provisions can not be used interchangeably. Section 126.403 controls what happens after a program examination is conducted and the SBA has determined that the concern is not qualified. 13 C.F.R. § 126.403. It provides that "[i]f SBA finds a HUBZone SBC is not qualified, SBA will decertify the concern and delete its name from the List." 13 C.F.R. § 126.403. It does not provide for automatic revocation of existing contracts that were procured as a result of the non-qualified contractor previously being on the list of qualified concerns. *Id.* Section 126.403 does allow, however, the SBA, at its discretion, to pursue penalties in accordance with section 126.900. *Id.*

Section 126.900 does not mandate revocation of existing contracts either. 13 C.F.R. § 126.900. It does provide that the concern may be suspended or debarred. *Id.* 48 C.F.R. § 9.405–1 governs the effects of debarment. 48 C.F.R. § 9.405–1. Under 48 C.F.R. § 9.405–1, even if a contractor is debarred, "agencies may continue contracts or subcontracts in existence at the time the contractor was debarred ... unless the agency head or a designee directs otherwise." *Id.* It is within the SBA's discretion as to whether it suspends or debars a decertified concern. At this time, the SBA has not debarred Si–Nor. Even if the SBA had debarred Si–Nor, the U.S. Army would still have the discretion to continue the contract. Therefore, this Court can not directly apply the results of the program examination to the contract at issue.

On the other hand, the regulations concerning status protests are distinct from both those that control size protests and those dealing with program examinations. *Compare* 13 C.F.R. §§ 126.800—126.805 *with* 13 C.F.R. §§ 121.1001—121.1010 *and* 13 C.F.R. §§ 126.400—126.405. When the SBA receives a status protest, it must "determine the HUBZone status of the protested HUBZone

was never told that it was prohibited from filing a proposal, and therefore, the contracting officer could not be blamed for the plaintiff's delay. In this case, there was no allegation that the contracting officer misled the plaintiff into believing

that it could not submit a proposal, and there was no denied request for an extension. The Court therefore finds *North Carolina Div. of Servs. for the Blind* to be inapposite.

SBC within 15 business days." 13 C.F.R. § 126.803(b)(1). During that period, the contracting officer may only award the contract "if the contracting officer determines in writing that an award must be made to protect the public interest." 13 C.F.R. § 126.803(b)(3). The contracting officer may, however, award the contract after the 15 days have passed if the SBA has not contacted the contracting officer within that time period. 13 C.F.R. § 126.803(b)(2). After examining those regulations, it becomes clear to the Court that, had the contracting officer forwarded the status protest to the SBA, and the SBA had upheld the protest, Si–Nor never would have been awarded the contract. If that were the case, then plaintiff was next in line to receive the contract.

Defendant argues, however, that the contract can not now be rescinded because the contract has already been awarded and "a HUBZone protest may [not] delay the award of a contract indefinitely." Def.'s Mot. for J. on the Admin. R. 17. To support that contention, defendant relies on the provision that allows the contracting officer to award the contract, notwithstanding a lack of decision from the SBA, after 15 days have passed since the SBA received the protest. 13 C.F.R. § 126.803(b)(2). The regulations, however, make clear that the contracting officer's authority to award the contract before the SBA has made a determination is applicable only after the contracting officer has actually forwarded the protest, and the SBA has failed to respond promptly. Here, the contracting officer never forwarded the protest, so that provision never came into play. When a contracting officer files a protest with the SBA, the burden is on the SBA to respond within a certain period of time. 13 C.F.R. § 126.803(b)(1). If the contracting officer does not file the protest with the SBA, however, that burden can not switch to the SBA. Therefore, the Court finds that, if it is determined that the SBA would have upheld the protest within the 15 day period, the contracting officer's failure to forward the protest would have been prejudicial to the plaintiff.

The only question that remains in determining whether there was a prejudicial violation of a statute or regulation is whether the SBA would have upheld the protest. As the SBA has not had a full opportunity to address that issue, the Court finds that the most appropriate way to determine the answer is to remand the issue to the SBA. The Court, therefore, REMANDS this issue to the SBA. The method used to make this determination is a matter for the SBA to decide.

SBA's decision must set forth its rationale with clarity, and must be justifiable on that basis. *SEC v. Chenery Corp.*, 332 U.S. 194, 196–97, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). The decision must also be rational and properly founded in the statutory authority granted by Congress. *Id.* at 207, 67 S.Ct. 1575. The Court expects that to meet that standard, SBA will need to address 13 C.F.R. §§ 126.800—126.805. In particular, the Court expects the SBA to address, among other issues: (1) whether the October 17, 2002 fax was sufficiently specific for the SBA to have considered it as a HUBZone status protest; (2) whether the protest would have been granted after examining the reasons given in the fax and the attached information; and (2) whether the SBA would have examined other issues concerning Si-nor's eligibility, including the employment requirement, and would, therefore, have granted the protest. The Court does not, of course, prejudge these issues. SBA is the best interpreter of its own regulations. *Lyng v. Payne*, 476 U.S. 926, 939, 106 S.Ct. 2333, 90 L.Ed.2d 921 (1986); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). SBA must, however, offer a reasonable interpretation of them. *Northern Ind. Pub. Serv. Co. v. Porter County Chapter of the Izaak Walton League*, 423 U.S. 12, 16, 96 S.Ct. 172, 46 L.Ed.2d 156 (1975).

## *CONCLUSION*

1. This matter is remanded to the SBA for its determination, consistent with this opinion, as to whether SBA would have upheld plaintiff's protest had it been timely received by the SBA. The SBA shall file this determination with the Court by September 4, 2003.

2. This opinion shall be published as issued after August 15, 2003, unless the parties identify protected and/or privileged materials subject to redaction, and submit to the Court a proposed redacted opinion, by said date.