MARK DUNNING INDUSTRIES,
INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 03–465C.

United States Court of Federal Claims.

March 4, 2005.

Karl Frederick Dix, Smith, Curie & Hancock LLP, Atlanta, Ga., for plaintiff.

Michael O'Connell, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Robert E. Kirschman, Assistant Director, for defendant. Major Kevin Robitaille, Army Litigation Division, and Beverly Hazlewood–Lewis, U.S. Small Business Administration, Office of General Counsel, of counsel.

## OPINION

MARGOLIS, Senior Judge.

This post-award bid protest is before the Court on renewed cross motions for judgment on the administrative record. Plaintiff, Mark Dunning Industries, Inc. ("MDI"), challenges the award of a refuse collection and disposal contract to Si–Nor, Inc. ("Si–Nor"). Plaintiff maintains that Si–Nor should not have received a 10% price evaluation preference based on Si–Nor's Small Business Administration ("SBA") status as a Small Business Concern ("SBC") located in a historically underutilized business zone ("HUBZone") because Si–Nor did not meet the statutory requirements for HUBZone status. Plaintiff claimed that it submitted a timely SBA status protest to the contracting officer ("CO"), who never forwarded the protest to SBA. Plaintiff, therefore, claimed that its protest was never properly decided on the merits. On August 21, 2003, this Court held that the CO's failure to forward MDI's protest fax was a violation of the HUBZone regulations, *Mark Dunning Indus. v. United States*, 58 Fed.Cl. 216, 224 (2003), and remanded the matter to SBA to determine whether it would have upheld the plaintiff's protest had it been timely received. *Id.* at 225. At the Court's direction, SBA reviewed plaintiff's protest and affirmed its dismissal of plaintiff's protest. The matter came before the Court again on plaintiff's motion for judgment on the administrative record and defendant's and former defendant-intervenor Si–Nor's cross-motions for judgment on the administrative record.[1] On May 27, 2004,

---

1. On December 2, 2004, this Court granted Si–   Nor's counsel's motion to withdraw from repre-

after consideration of the parties' cross-motions for judgment on the administrative record, this Court remanded this matter to SBA to provide evidence of Si–Nor's HUBZone eligibility at the time of bid opening. *See Mark Dunning Indus., v. United States,* 60 Fed.Cl. 687, 693 (2004). Pursuant to this Court's order, the SBA investigated Si–Nor's eligibility and determined that Si–Nor was a qualified HUBZone SBC at the time of bid opening. The SBA HUBZone Contracting Program Associate Administrator, Michael P. McHale, rendered his decision on July 14, 2004. That decision was affirmed by Allegra F. McCullough, the Associate Deputy Administrator for Government Contracting and Business Development on August 20, 2004. The SBA's decision is now before this Court for review. After consideration of the cross-motions for summary judgment on the administrative record and oral argument, plaintiff's motion is denied, and the defendant's motion is granted.

## FACTS

Pursuant to this Court's order, the SBA investigated Si–Nor's eligibility and determined that Si–Nor was a qualified HUBZone small business concern at the time of the bid opening on October 11, 2002. Specifically, the SBA found that Si–Nor met the principal office requirement at the time of bid opening and was, therefore, a qualified HUBZone small business concern eligible for HUBZone contracts. The SBA came to this conclusion after the SBA requested that Si–Nor provide supporting documents demonstrating that its principal office was located in a HUBZone at the time of bid opening. In response, Si–Nor provided numerous documents including payroll records, copies of state unemployment tax filings, job site locations, weekly hours for employees, copies of tax bills for various properties, copies of utility bills, a map showing that the Vernon office is located in a HUBZone, a statement that Si–Nor owns each of its three properties, and a copy of a temporary Certificate of Occupancy for the

office located in the HUBZone. In addition, Si–Nor provided a statement "that at the time of bid opening, 31 employees worked at the Vernon office, 3 at the Gardena office and 10 at the Rialto office." SBA July 14, 2004 Decision at 3. Si–Nor also provided a statement describing the duties of its employees at its various offices. Specifically, Si–Nor noted that all of its employees that are truck drivers report to work at the Vernon office, sign their time sheets, pick up their trucks and equipment, and proceed to service their customers throughout the day. Si–Nor also provided a breakdown of the hours each employee spends performing duties at the various job site locations.[2] *Id.* at 4. Further, in response to plaintiff's allegations that the Vernon office was merely a "truck terminal with a guard shack," Si–Nor submitted a statement explaining that at the time of bid opening, the Vernon location was undergoing construction and site improvement. Therefore, the Vernon site only utilized a small temporary facility, with temporary sanitary facilities and portable water coolers, at the time of bid opening.

After reviewing this information, the SBA filed a decision, dated July 14, 2004, finding that "13 full-time employees worked at the Vernon office, 5 full-time employees worked at the Rialto office, and 3 full-time employees worked at the Gardena office." SBA July 14, 2004 Dec. at 6. The SBA based its decision on the documents provided by Si–Nor. In addition, the SBA relied on 13 C.F.R. § 126.103 for the definition of principal office. The regulations provide in part:

> Principal office means the location where the greatest number of the concern's employees at any one location perform their work. However, for those concerns whose 'primary industry' is service or construction, the determination of principal office *excludes the concern's employees who perform the majority of their work at job-site locations to fulfill specific contract obligations.*

sentation. Accordingly, this Court dismissed Si–Nor as defendant-intervenor with prejudice for failure to comply with RCFC 83.1(c)(8).

2. Si–Nor also provided the percentages for employees located in offices other than those in Vernon, Gardena and Rialto, such as Hawaii, North Carolina, Nebraska and Alabama.

13 C.F.R. § 126.103 (internal citations omitted; emphasis added). Accordingly, in calculating the number of employees at each Si–Nor location, the SBA excluded job site workers. Because Si–Nor's primary industry is solid waste collection, the SBA determined that all employees that were swampers or drivers and performed most of their work at job site locations would be excluded from the principal office calculation. SBA July 14, 2004 Dec. at 7. In addition, contrary to plaintiff's claim, the SBA decided that Si–Nor's Vernon office was not merely a truck terminal with a guard shack. The SBA determined after a full investigation that there were employees at the Vernon location and that Si–Nor provided its employees with sufficient facilities at the time of bid opening. Accordingly, SBA determined that the Vernon facilities constituted Si–Nor's principal office at the time of bid opening.

In response to the SBA's July 14, 2004 decision, plaintiff filed an appeal on July 21, 2004. Plaintiff asserted that the SBA's decision "failed completely to consider a significant fact contained within the information supplied by the protestor or the protested HUBZone SBC." 13 C.F.R. § 126.805(e). Specifically, plaintiff argued that the SBA neither properly nor completely considered the facts. In its July 2, 2004 submission, plaintiff supplied numerous documents to support its claim that the Vernon location failed to meet the principal office requirement at the time of bid opening. Admin. Rec. at 51–56. For example, plaintiff provided documents in which Si–Nor refers to the Vernon location as a "truck terminal" or "parking lot." Plaintiff also provided documents claiming that virtually all of the Vernon employees were truck drivers rather than principal office employees. Furthermore, plaintiff provided other documents in which Si–Nor had claimed that the Vernon location employs "0 women, 4 men." In addition, plaintiff provided an affidavit from a private investigator, Donald Moon, who visited the site and observed that it was no more than a vacant lot with some dumpsters and other equipment without any hot water hookups, portable toilets or any other restroom facilities for office workers. Plaintiff also produced evidence supporting its contention that Si–Nor's Rialto office is its principal office. For example, plaintiff submitted a court filing in which Si–Nor claimed that its principal place of business was its Rialto office. Further, the Rialto office was the only office listed in Si–Nor's bid for this particular contract. In addition, plaintiff provided other evidence, such as Court filings, depositions, applications, and other correspondence, in which the Rialto office was repeatedly listed as either the main or principal office. Accordingly, plaintiff contends that the Vernon office was not the principal office and that Si–Nor was ineligible at the time of bid opening to claim that it was a HUBZone eligible SBC since its principal office, Rialto, California, was not located inside a HUBZone.

## DISCUSSION

This case is presently before the Court on plaintiff's and defendant's cross-motions for judgment on the administrative record.

### 1. Standard of Review

Plaintiff requests the Court to set aside the SBA's decision that Si–Nor's principal office was located in a HUBZone at the time of bid opening. When a contractor seeks to set aside a government agency decision, courts apply the standard of review for agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *See* 28 U.S.C. § 1491(b)(4); *See also Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1057 (Fed.Cir.2000). Thus, under § 706, an agency's decision should not be disturbed unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Moreover, pursuant to RCFC 56.1, the plaintiff has the burden of proof on its motion for judgment on the administrative record. *See Strickland v. United States,* 61 Fed.Cl. 443, 451 (Fed.Cl.2004). The Supreme Court has identified several examples of arbitrary and capricious agency actions:

[T]he agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to

the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

In determining whether the agency acted arbitrarily or capriciously, the ultimate standard of review is a narrow one. "The court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). "The agency's decision is entitled to a 'presumption of regularity,' although that presumption does not shield it from a 'thorough, probing, in-depth review.'" *Redland Genstar, Inc. v. United States*, 39 Fed.Cl. 220, 231 (1997) (quoting *Citizens to Preserve Overton Park*, 401 U.S. at 415, 91 S.Ct. 814). The Court must defer to the agency's decision unless it is without substantial basis in fact. *See Redland Genstar*, 39 Fed.Cl. at 231 ("While the court 'recognize[s] the relevant agency's technical expertise and experience, and defer[s] to its analysis unless it is without substantial basis in fact,' the court must also perform an informed review of even technical decisions in order to meaningfully exercise its jurisdiction.") (quoting *Federal Power Comm'n v. Florida Power and Light Co.*, 404 U.S. 453, 463, 92 S.Ct. 637, 30 L.Ed.2d 600 (1972)).

**2. Justiciability**

On December 2, 2004, defendant filed a Notice of Supplemental Authority where defendant notified the Court that it may rely upon *Chapman Law Firm v. United States*, 63 Fed.Cl. 25 (2004). In *Chapman*, this Court dismissed a bid protest arising from a post-award size determination of the SBA as non-justiciable. 63 Fed.Cl. at 35. The Court relied on FAR § 19.302(g)(2) which provides that a contract award is presumed to be valid if the award was made before an appeal is filed with SBA's Office of Hearings and Appeals ("OHA"). *Id.* at 34. The Court rea-

soned that because plaintiff did not file its appeal with OHA until ten days after the contract award, any decision reached by SBA's OHA could not affect the contract award. *Id.* at 35. Therefore, the Court held that the SBA's post-award size determination could not be challenged on SBA size determination grounds, and plaintiff's claim was not justiciable. *Id.*

The Court declines to rely on *Chapman*. Whereas *Chapman* arose from the review of an SBA size determination, the present case arises from a HUBZone determination. FAR § 19.302, the applicable regulation in *Chapman*, does not apply to a HUBZone determination; HUBZone determinations are governed by FAR § 19.306. The language found in FAR § 19.302(g)(2), requiring an appeal to be made before a contract is awarded, is not present in FAR § 19.306. Accordingly, *Chapman* does not apply to the present matter. Plaintiff's claim is justiciable, and the Court will proceed to rule on the merits.

**3. Si–Nor's Vernon Location was its Principal Office**

Plaintiff asserts that the SBA has failed to articulate a rational connection between the facts found and the SBA's conclusion that Si–Nor's principal office was located in a HUBZone. Plaintiff argues that the record makes it clear that the Vernon location is merely a job site for Si–Nor's contract with the Los Angeles Unified School District rather than its principal office. Plaintiff makes numerous arguments in support of its assertion that the SBA's decision was arbitrary, capricious, and an abuse of discretion.

**A. The Vernon Location is not a Job Site**

Plaintiff argues that the Vernon location is a job site because there are no substantial differences between the functions of the personnel at the Vernon location and the functions of those that work at Si–Nor's other job sites.[3] Plaintiff argues that the SBA acted contrary to law because despite the fact that

---

**3.** Si–Nor indicates that its other job sites are located in Hawaii, North Carolina, North Dako-

ta, Alabama, and Nebraska. Admin. Rec. at 218–220.

the sites were functionally similar, the SBA arbitrarily distinguished the employees at the other locations from those at the Vernon location by finding that the managers and supervisors at the other locations *also* performed the majority of their work at job sites to fulfill specific contract obligations. Therefore, pursuant to 13 C.F.R. § 126.103, the SBA excluded the managers and supervisors from the total number of employees at the other locations while including them in the calculation of the total number of employees at the Vernon location. Plaintiff contends that the distinction drawn by the SBA was not based on any evidence other than Si–Nor's unsupported assertions on the worksheets themselves that certain employees working at those sites were job-specific employees. Plaintiff asserts that the Rialto office is actually the principal office because the employees listed on the payroll register from the Rialto office are divided by job function, while the employees from all of the other locations (including the Vernon location) are not.[4] Plaintiff contends that the Vernon location is a job site which is corroborated because on every state and local application relating to that site, Si–Nor described the Vernon location as a "Truck Terminal."

In response, defendant asserts that the Vernon location is not a job site. Defendant argues that there is no requirement in the regulations that specific job functions be performed at specific sites, and accordingly, plaintiff's contention concerning the meaning of Si–Nor's departmental codes does not amount to evidence that the Vernon location is a job site. Defendant further indicates that contrary to plaintiff's allegation that all of the Vernon employees are categorized under the same code, one Vernon employee is categorized under a different code than the others. Finally, defendant contends that the Vernon office cannot be a job site because it is not the location where the work for the contract is performed.

This Court defers to the SBA's decision that the Vernon location is not a job site. The SBA made every effort to verify Si–Nor's principal office at the time of bid opening. The agency obtained numerous documents from Si–Nor including a temporary occupancy permit issued before the date of bid opening, and a signed statement by Si–Nor stating that it had employees working at the Vernon location at the time of bid opening. Further, Si–Nor provided a spreadsheet that stated the name of each employee, the location at which each employee performed their work, each employee's job title, and a statement explaining how much work each employee performed at each location. The SBA concluded that these documents indicated that the Vernon location was more than a truck terminal; it was an actual office with employees for whom Si–Nor provided sanitary facilities and drinking water. The Court finds this conclusion to be based in fact and agrees with the SBA that plaintiff's arguments and evidence fail to refute Si–Nor's verified statements and evidence. Moreover, regarding the departmental codes, the Court agrees with defendant that there is no requirement that specific job functions be performed at specific locations; such a requirement does not exist in the regulations. *See* 13 C.F.R. § 126.103. Therefore, plaintiff's contention regarding the difference between the departmental codes at the Rialto location and Si–Nor's other locations fails to refute the SBA's determination that the Vernon location is Si–Nor's principal office rather than a job site.

### B. Thirteen Employees Work at the Vernon Location

In its July 14, 2004 decision, the SBA determined that 13 full-time employees worked at the Vernon office. In making the determination, the SBA included the two vice-presidents in the final count, based on the fact that Si–Nor stated that its two vice-presidents perform 45% of their duties at the Vernon office, 35% at the Rialto office, 10% at the Gardena office, and 10% at various locations in other states. SBA July 14, 2004

---

4. Plaintiff asserts that the employees listed at the Rialto office are categorized as either Department 001 (president and vice-president), 005 (mechanics and drivers), and 006 (administrative staff). Plaintiff points out that the personnel at all of the other locations, including Vernon, are categorized as the contract-specific code, regardless of function.

Dec. at 6.[5] The SBA assumed that employees that perform duties as swampers and drivers perform the majority of their work at job site locations to fulfill contract obligations. Accordingly, the SBA excluded drivers and swampers from the total number of employees at every location in the calculation of principal office.

Plaintiff contends that the Vernon site does not have accommodations for 13 employees. To support its assertion, plaintiff points to the fact that at the time of bid opening, the Vernon location only had temporary sanitary facilities, portable water coolers, no permanent power or phone lines, and only two laptop computers. Plaintiff claims that it is unreasonable to conclude that 13 management officials could work in such a facility. Further, plaintiff argues that the employees listed as supervisors at the Vernon location supervise contract specific work and should have been excluded from the calculation. Furthermore, plaintiff argues that the observations of an SBA staffer contradict the notion that Vernon is the principal office. The SBA staffer noted that the Vernon location "appear[ed] to be the principal office where the employees report to for their daily assignments." Pl.'s Brief in Supp. of its Mot. For Jud. on the A.R. at 15. Plaintiff argues that an office to which employees report to get their daily assignments cannot be a principal office, and none of the reporting employees should have been counted in the final count.

The SBA asked Si–Nor to address plaintiff's allegation that the Vernon office was merely a truck terminal with a guard shack that could not accommodate 13 employees. In response, Si–Nor submitted a statement explaining that at the time of bid opening, the Vernon location was undergoing construction and site improvement. Si–Nor explained that, due to the construction, the trailer that housed three offices had been temporarily moved from Vernon and replaced with a smaller facility to accommodate the staff. Si–Nor noted, however, that the facilities were equipped with temporary sanitary facilities, portable water coolers, and two laptop computers. SBA July 14, 2004 Dec. at 6. Si–Nor also submitted a statement declaring that a new truck terminal and facilities were to be constructed, and in the meantime, the Vernon office was using a power generator, mobile phone terminals, and radios to accommodate its needs. SBA July 14, 2004 Dec. at 3.

Once again, the Court must defer to the SBA's determination that 13 full-time employees worked at the Vernon location at the time of bid opening. The SBA arrived at its conclusion after reviewing payroll records and Quarterly Wage and Withholding Reports, as well as other information provided by both Si–Nor and MDI. SBA's July 14, 2004 Dec. at 3. The SBA was correct in concluding that since Si–Nor's primary industry is solid waste collection, the determination of its principal office excluded drivers and swampers; they are employees who invariably perform their work at various pickup or delivery sites in order to fulfill specific contract obligations. SBA's July 14, 2004 Dec. at 7. Furthermore, the Court disagrees with plaintiff's contention that the Vernon location could not employ 13 employees because of its size. Si–Nor has repeatedly asserted that only five of the employees actually used the office with the remainder working in the yard. The Court notes that the SBA staffer in his November 15, 2002 investigative report used the term "principal office" when referring to the Vernon location.

## C. HUBZone Firms May Have More Than One Office

Plaintiff contends that the Vernon location cannot be Si–Nor's principal office because the only form on which Si–Nor claimed the Vernon office as its principal office was its HUBZone application. Plaintiff claims that on its letterhead and business cards, state and local filings and even on the bid itself, Si–Nor listed its address as the Rialto location. In response, defendant points out that plaintiff confuses the concept of "corporate headquarters" or "administrative office" with

5. In making this determination, the Associate Administrator noted that even if he were to exclude the two vice-presidents from the final determination, the Vernon location would still qualify as the location where the majority of Si–Nor's employees perform their work.

"principal office." Defendant asserts that it is possible that a firm's principal office may not be its headquarters due to the fact that a greater number of the firm's employees perform their duties at a HUBZone office location rather than at the company's corporate headquarters.

This Court agrees with defendant. The principal office definition can mean something very different from a company's headquarters. A small business might have a headquarters in a non-HUBZone location, establish a principal office within a HUBZone locality, and still qualify legitimately for program participation. The SBA rejected the definition of a principal office as the place where the company performs its general and administrative functions. *See* HUBZone Empowerment Contracting Program, 63 Fed. Reg. 31,896, 31,897–31898 (June 11, 1998) (codified at 13 C.F.R. § 126.103). The Rialto office, which is in a non-HUBZone location, is Si–Nor's Administrative Office. *See* Admin. Rec. at 232. In contrast, the Vernon location is Si–Nor's principal office because it is the location where the greatest number of Si–Nor's employees perform their work. As stated above, the Court defers to the SBA's determination that 13 full-time employees worked at the Vernon location at the time of bid opening. As a result of the SBA's thorough investigation, there is substantial evidence to support its finding.

The SBA decision was rational and supported by the administrative record. Furthermore, the SBA's determination was neither arbitrary, capricious, an abuse of discretion nor contrary to law.

Moreover, because plaintiff's claim fails on the merits, this Court need not reach the other issues raised by plaintiff's request for permanent injunctive relief. *See AmerisourceBergen Drug Corp. v. United States,* 60 Fed.Cl. 30, 38 (2004). *See also United Int'l Investigative Serv. Inc. v. United States,* 41 Fed.Cl. 312, 323 (1998) (setting out the other three factors the protestor must establish to be entitled to a permanent injunction).

Plaintiff's request for permanent injunctive relief is denied.

### CONCLUSION

For the foregoing reason, plaintiff's motion for judgment on the administrative record is DENIED, and defendant's motion for judgment on the administrative record is GRANTED. The clerk shall dismiss the complaint and enter judgment for the defendant. No costs.