**MARK DUNNING INDUSTRIES, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant,**

and

**Si–Nor, Inc., Defendant–Intervenor.**

No. 03–465C.

United States Court of Federal Claims.

May 27, 2004.

Karl Frederick Dix, Smith, Curie & Hancock LLP, Atlanta, Ga., for plaintiff.

Michael O'Connell, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Robert E. Kirschman, Assistant Director, for defendant. Major Kevin Robitaille, Army Litigation Division, and Glenn P. Harris, U.S. Small Business Administration, Office of General Counsel, of counsel.

Karen D. Powell, Petrillo & Powell, PLLC, Washington, D.C., with whom was Joseph J. Petrillo, Petrillo & Powell, PLLC, for defendant-intervenor.

## *OPINION*

MARGOLIS, Senior Judge.

This post-award bid protest is before the Court on cross-motions for judgment on the administrative record. Plaintiff, Mark Dunning Industries, Inc. ("MDI"), challenges the award of a refuse collection and disposal contract to defendant-intervenor, Si–Nor, Inc. ("Si–Nor"). Plaintiff maintains that Si–Nor should not have received a 10% price evaluation preference based on Si–Nor's Small Business Administration ("SBA") status as a Small Business Concern ("SBC") located in a historically underutilized business zone ("HUBZone") because Si–Nor did not meet the statutory requirements for HUBZone status. Plaintiff claimed that it submitted a timely SBA status protest to the

contracting officer ("CO"), who never forwarded the protest to SBA. Plaintiff, therefore, claims that its protest was never properly decided on the merits. On August 21, 2003, this Court held that the CO's failure to forward MDI's protest letter was a violation of the HUBZone regulations, *Mark Dunning Indus. v. United States,* 58 Fed.Cl. 216, 224 (2003) ("*Mark Dunning I*"), and remanded the matter to SBA to determine whether it would have upheld plaintiff's protest had it been timely received. *Id.* at 225. At the Court's direction, SBA reviewed plaintiff's protest and affirmed its dismissal of plaintiff's protest. The matter is again before this Court on plaintiff's motion for judgment on the administrative record and defendant's and defendant-intervenor's cross-motions for judgment on the administrative record. After careful consideration, the Court **DENIES** both plaintiff's and defendants' cross-motions for judgment on the administrative record, and **REMANDS** the matter to SBA.

### FACTS

On August 21, 2003, this Court issued an opinion, directing SBA to determine "whether SBA would have upheld plaintiff's protest had it been timely received by the SBA." [1] Specifically, the Court stated that, in its decision, SBA should address, among other issues: (1) whether the October 17, 2002 fax was sufficiently specific for SBA to have considered it as a HUBZone status protest; (2) whether the protest would have been granted after examining the reasons given in the fax and the attached information; and (3) whether SBA would have examined other issues concerning Si–Nor's eligibility, including the employment requirement, and, therefore, would have granted the protest. *See Mark Dunning I,* at 225. On September 22, 2003, after reviewing MDI's protest, SBA dismissed the protest for lack of specificity because it failed "to articulate any ground to show that Si–Nor was not eligible for the HUBZone program or entitled to HUBZone preference." In response, MDI appealed SBA's decision. On November 13, 2003, SBA denied MDI's appeal, finding that MDI's protest letter was not specific and

that SBA did not ignore significant facts in rendering its first decision. Following SBA's denial of plaintiff's appeal, the parties filed motions for judgment on the administrative record in this Court.

### DISCUSSION

### I. Jurisdiction and Standard of Review

This Court has jurisdiction to review post-award bid protests pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1). To succeed in a bid protest action, "[a] protestor must prove by a preponderance of the evidence the arbitrary and capricious nature of the Government's actions or the violation of an applicable procurement regulation." *Tech. Sys., Inc. v. United States,* 50 Fed.Cl. 216, 222 (2001). Under this standard, a frustrated bidder must "establish that (1) the Government officials involved in the procurement process were without a rational and reasonable basis for their decision, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes and regulations." *Ellsworth Assocs., Inc. v. United States,* 45 Fed.Cl. 388, 392 (1999). Further, the protester must also show that it was prejudiced by the error in the procurement process. *Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1367 (Fed. Cir.1999) (citing *Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1581 (Fed.Cir.1996)).

### II. Prejudice

"[B]ecause the question of prejudice goes directly to the question of standing," the Court must first determine whether plaintiff was prejudiced by the alleged agency errors. *Info. Tech. & Applications Corp. v. United States,* 316 F.3d 1312, 1319 (Fed.Cir.2003). To establish prejudice, a protestor must show "that there was a 'substantial chance' it would have received the contract award but for the alleged error." *Data Gen. Corp. v. Johnson,* 78 F.3d 1556, 1562 (Fed.Cir.1996).

In this case, plaintiff contends that it was prejudiced by SBA's arbitrary dismissal of its protest as unspecific. Plaintiff claims that, had SBA properly considered its·letter and investigated Si–Nor, there was a sub-

---

1. *Mark Dunning I* contains a detailed description of the case's factual background.

stantial chance that it would have received award of the contract. In response, defendant makes two arguments. First, defendant argues that plaintiff cannot demonstrate prejudice because, even if the contracting officer had forwarded the protest letter to SBA, SBA would have dismissed the protest as unspecific. Second, defendant claims that, even if MDI had raised specific allegations regarding the location of Si–Nor's principal office, SBA would have found that the principal office was located in a HUBZone and would not have examined whether Si–Nor met the 35% residency requirement. The Court finds that defendant's arguments lack merit and holds that plaintiff has adequately demonstrated prejudice.

 The case law makes clear that a finding of prejudice must be based "not on the ultimate merits of the case, but on the allegations of error." *Overstreet Elec. Co., Inc. v. United States,* 59 Fed.Cl. 99, 112 (2003). Thus, in determining prejudice, a court assumes the validity of the plaintiff's allegations. Consequently, plaintiff's allegation—that SBA arbitrarily dismissed its letter as unspecific—is sufficient to demonstrate prejudice because, had SBA upheld plaintiff's protest, Si–Nor would not have been awarded the contract. Because plaintiff was next in line for the contract, it is clear that but for the alleged error, plaintiff had a substantial chance of receiving the contract.

The Court also finds that defendant's second argument also lacks merit. First, defendant argues that, even if SBA erred in finding that MDI's protest letter was unspecific and thus, had a duty to investigate whether Si–Nor met the principal office location requirement, it would have found that Si–Nor did meet this requirement, and Si–Nor would still have received the contract. Defendant's contention is based on three different SBA decisions, which all found that Si–Nor met the principal office requirement. First, in November 2002, SBA conducted an unannounced visit to Si–Nor's Bandini office (which is located in a HUBZone), and found that it was Si–Nor's principal office. Second, in December 2003, in connection with a different status protest, SBA conducted an in-

vestigation of Si–Nor's eligibility, and found that Si–Nor met the principal office requirement. Finally, in February 2004, SBA again found that Si–Nor met the principal office requirement.

The question at issue in this case is whether Si–Nor met the HUBZone requirements at the time of bid opening (October 2002). In other words, if SBA had conducted an investigation into Si–Nor's HUBZone eligibility, in response to a proper status protest, would it have found that, at the time of bid opening, Si–Nor met all HUBZone requirements? The Court finds that none of the three decisions cited by defendant establish that Si–Nor met the principal office requirement at the time of bid opening. First, SBA's November 2002 actions do not constitute an "investigation" for purposes of a status protest. In response to an e-mail, a SBA Assistant District Director ("ADD") conducted an unannounced visit to Si–Nor's Bandini office. Def–Int.'s Motion to Suppl. Adm. Rec. Ex. A. The ADD did not visit Si–Nor's other sites, nor did he seek information about these other sites. The ADD merely observed cars in the parking lot and an office trailer with a secretary and two yard workers. Based solely on these observations, he concluded that the Bandini office "*appears* to be the principal office where the employees report to for their daily assignments." *Id.* (emphasis added). He then conveyed this information to the HUBZone Program's Area Director via e-mail. This cursory visit hardly constitutes a formal investigation for purposes of a status protest.

Second, SBA's December 2003 and February 2004 decisions do not determine whether Si–Nor met the HUBZone requirements at the time of bid opening. Thus, the Court finds that the question remains unanswered. Had SBA conducted a proper investigation and found that Si–Nor did not meet the principal office location, MDI, being the next lowest bidder, would have had a substantial chance of receiving contract award. Accordingly, this Court finds that plaintiff has established prejudice.

### III. Whether Plaintiff's Protest Letter Was Specific

 Looking at the allegations of error, the Court must first determine whether

SBA's decision to dismiss MDI's protest for lack of specificity was arbitrary and capricious. On October 16, 2002, MDI submitted a protest letter asking the CO to verify whether Si–Nor met the requirements for HUBZone certification. The letter explained that although Si–Nor claimed HUBZone certification, according to the SBA HUBZone locator, their address was not in a HUBZone. In addition, MDI attached a printout, which showed the HUBZone locator results for Si–Nor's address. On September 22, 2003, SBA dismissed MDI's protest for lack of specificity. SBA explained that MDI's letter failed to articulate any ground to show that Si–Nor was not eligible for the HUBZone program or entitled to the HUBZone preference. Thereafter, MDI filed an appeal petition arguing that SBA misapplied the applicable regulations, and that the protest was specific because it set forth specific facts or allegations, which raised questions regarding Si–Nor's compliance with the eligibility requirements. On November 13, 2003, SBA upheld the original decision, finding that MDI's protest letter contained no allegations regarding Si–Nor's principal office, and did nothing more than state that Si–Nor has an office located outside of a HUBZone.

Plaintiff maintains that both the original and appeal decisions were arbitrary and capricious. Specifically, plaintiff contends: (1) that the decisions applied an "unduly restrictive, arbitrary interpretation" of the specificity regulation, Pl.'s Mot. at 17; (2) that the decisions arbitrarily ignored the facts raised by the protest; and (3) that the decisions were inconsistent with decisions rendered in other HUBZone protests and size protests.[2] Defendant contends that the decisions were rational, reasonable and fully consistent with SBA regulatory procedures. This Court agrees with plaintiff, and finds that the decisions were arbitrary and capricious.

The specificity regulation provides, in pertinent part:

A protest merely asserting that the protested concern is not a qualified HUBZone SBC, without setting forth specific facts or allegations, is insufficient.

13 C.F.R. § 126.801(b) (specificity regulation). MDI's protest letter meets this requirement. It does more than simply assert that Si–Nor is not a qualified HUBZone SBC generally—it specifically questions whether Si–Nor meets the principal office location requirement. Indeed, the protest letter does more than simply allege that Si–Nor does not meet the principal office location requirement—it provides factual evidence, in the form of a printout from the HUBZone's website, which supports MDI's specific allegation. While MDI's protest letter might not be a model of clarity, it is sufficient to satisfy the specificity regulation.

In both decisions, SBA explained that MDI's failure to use the term "principal office" was a significant factor leading to its determination that MDI's protest letter lacked specificity. The specificity regulation, however, contains no requirement that a protest must be submitted in any particular form or use any particular wording. All the regulation requires is that a protestor submit a writing that contains the grounds for the protest and does more than merely assert that a protested concern is not a qualified HUBZone SBC. § 126.801(b). The Court is aware that "an agency's interpretation of its own regulations is normally entitled to considerable deference," *Data General Corp.*, 78 F.3d at 1561 (internal citations omitted). This deference, however, is not warranted where, as here, the agency impermissibly increases what is required by the plain language of the regulation. *See Allentown Mack Sales and Service, Inc. v. NLRB*, 522 U.S. 359, 374, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998) ("It is hard to imagine a more violent breach of [the requirement of reasoned decisionmaking] than applying a rule of primary conduct or a standard of proof which is in fact different from the rule or standard formally announced."). SBA is, of course, free to amend its regulations. *Id.* at 378, 118 S.Ct. 818. However, this Court will not impose requirements that are not explicitly

---

**2.** Size status protests are governed by different SBA regulations. See 13 C.F.R. §§ 121.1001– 121.1010.

called for by the plain language of the regulation.

Defendant argues that even if the specificity regulation does not require the use of the term "principal office," in this case, use of the term was necessary for SBA to identify the grounds for plaintiff's protest. This Court disagrees, and finds that the protest letter provided the SBA with clear notice that MDI was protesting whether Si–Nor's principal office was located in a HUBZone. The letter states: "Si–Nor, Inc. also claims HUBZone certification but according to the SBA HUB Zone locator their *address* IS NOT in a HUB Zone." Pl.'s Mot. Exh. C at 1 (emphasis added). There are only two requirements, other than the small business size requirement, for HUBZone eligibility: (1) the business concern's principal office must be located in a HUBZone, 13 C.F.R. § 126.103, and (2) 35% of the business concern's employees must come from a HUBZone location, 13 C.F.R. § 126.200(b). Given that MDI was protesting Si–Nor's HUBZone status (and not its size), it could only be questioning whether Si–Nor met the principal office location requirement, the 35% residency requirement, or both. When MDI's protest is read in this context it is clear that the word "address" is specific enough to convey that MDI was questioning whether Si–Nor met the principal office location. The Court finds that MDI's statement that Si–Nor's address was not located in a HUBZone sufficiently apprised SBA as to the specific grounds of MDI's protest.

Because MDI's letter sufficiently set forth: (1) the ground on which it questioned Si–Nor's HUBZone status, and (2) the factual allegations that formed the basis for the protest, it was arbitrary and capricious for SBA to dismiss the protest for lack of specificity. *See Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (explaining that an agency's decision is arbitrary and capricious if the agency's explanation for its decision runs counter to the evidence before the agency).

### IV. Certification Issues SBA Was Required to Investigate

Having established that MDI's protest letter was specific, this Court must now look at what actions SBA was required to take in response to MDI's protest. MDI's protest letter was specific with regard to the principal office location. Therefore, SBA had a duty to investigate whether, at the time of bid opening, Si–Nor met the principal office location requirement.

With regard to the 35% residency requirement SBA concluded that, even if it found MDI's protest letter to be specific, it would not investigate the 35% residency requirement because MDI did not protest this aspect of Si–Nor's eligibility, and SBA has an established policy of limiting its review to only those aspects of eligibility that a contractor protests. Plaintiff contends that this aspect of SBA's decisions were arbitrary and capricious because: (1) the protest letter explicitly questioned the 35% residency requirement, and (2) even if it did not explicitly question the 35% residency requirement, SBA's newly established policy of limiting its review of HUBZone protests to only the allegations raised in the protest is erroneous. This raises two issues for the Court to resolve: (1) whether SBA's decision, that MDI did not protest the 35% residency requirement, is supported by substantial evidence and (2) whether SBA provided a reasonable explanation, consistent with its regulations, for its policy.

### A. Whether the SBA's Decision Was Supported by Substantial Evidence

■ In its appeal decision, SBA stated that "[t]o the extent MDI's appeal focuses on whether Si–Nor met the 35 percent employee HUBZone residency requirement at the time of its bid, that information was not considered by the AA/HUB because it was clearly not part of MDI's Protest Letter." Pl.'s Mot. Exh. F at 5. The SBA Acting Associate Deputy Administrator ("AADA") found that MDI's protest did not contain any facts or allegations questioning whether Si–Nor met the 35% residency requirement. Further, the AADA found that MDI's request for the CO to "verify all certifications" did not meet the specificity requirement. Plaintiff contends that SBA's decision is arbitrary and

capricious because its protest letter explicitly questioned the 35% residency requirement. Specifically, plaintiff contends that its statement that Si–Nor's address was not located in a HUBZone coupled with its request for verification of all of Si–Nor's certifications is sufficient to satisfy the specificity requirement. The Court disagrees with plaintiff, and finds that the appeal decision rationally considered and rejected this contention.

The specificity regulation requires a protestor to set forth the specific grounds on which it questions the protested concern's eligibility. MDI's request that the CO "verify all certifications," standing alone, does not adequately set forth any specific ground to protest Si–Nor's eligibility. Further, MDI's protest letter provides no facts or allegations that could reasonably be read to show that MDI was protesting the 35% residency requirement. The only sentence questioning Si–Nor's eligibility refers only to the principal office location requirement. The SBA reasonably concluded that MDI's protest letter did not meet the specificity requirement with regard to the 35% residency requirement.

### B. Whether SBA Had a Duty to Review the 35% Residency Requirement

■ Plaintiff contends that because its protest was specific with regard to the principal office location, SBA had a duty to review whether Si–Nor met all the HUBZone certification requirements. Accordingly, plaintiff claims that SBA's "newly created, *ad hoc* policy" of limiting its review to only those allegations raised in a protest is arbitrary and capricious. Because SBA provided a rational basis for this policy, which is consistent with the language and purpose of the specificity regulation, the Court will not overturn SBA's decision.

SBA first explained that its policy is based on the short time-frame SBA has to render a HUBZone protest decision. 13 C.F.R. § 126.803(b) gives SBA 15 business days after receipt of a protest to render a decision in a HUBZone protest. Although MDI argues that verifying both requirements is not "difficult, onerous or time consuming," Pl.'s Reply at 4, this Court will not second guess an agency's decision as to the time necessary for it to carry out its duties. SBA next explained that its policy is based on the specificity regulation's purpose of preventing frivolous claims by disappointed bidders. According to SBA, under the regulation, the protestor has the burden of providing specific allegations and supportive facts regarding the protested firm's ineligibility. Here, MDI's protest did not allege any facts concerning whether 35% of Si–Nor's employees resided in HUBZones. To require SBA to review an eligibility requirement where a protestor has failed to adequately present allegations and evidence questioning that requirement, would vitiate the protestor's burden.

Because the Court finds that SBA's decision is supported by substantial evidence and that SBA did provide a reasonable explanation for its policy decision, the Court cannot say that the SBA's decision not to investigate whether Si–Nor met the 35% residency requirement is arbitrary, capricious, or otherwise not in accordance with the law.

### *CONCLUSION*

Plaintiff has established that SBA's dismissal of its protest as unspecific was arbitrary and capricious, and that SBA had a duty to investigate whether Si–Nor met the principal office requirement at the time of bid opening. Because defendant has failed to demonstrate that it verified Si–Nor's HUBZone eligibility at the time of bid opening, the Court is unable to render judgment for either party at this time. For the foregoing reasons, this Court **DENIES** defendants' cross-motions for judgment on the administrative record and **DENIES** plaintiff's motion for judgment on the administrative record. Further, the matter is remanded to SBA to provide evidence of Si–Nor's eligibility at the time of bid opening. SBA shall render a decision by *June 30, 2004.*