**CHAPMAN LAW FIRM, Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**Harrington, Moran, Barksdale, Inc., Defendant–Intervenor.**

No. 04–1553 C.

United States Court of Federal Claims.

Nov. 23, 2004.

James S. DelSordo, Washington, DC, for plaintiff. Justin M. Smith, Cleveland, OH, of counsel.

Andrew P. Averbach, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Brian M. Simkin, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Carolyn P. Fiume, United States Department of Housing and Urban Development, Washington, DC, of counsel. James C. Cantlon and David A. Fishman, Small Business Administration, Washington, DC, of counsel.

Alexander J. Brittin, Washington, DC, for defendant-intervenor.

## OPINION AND ORDER

HEWITT, Judge.

Before the court is the post-award bid protest of Chapman Law Firm Company, LPA (Chapman). Chapman alleges that the Small Business Administration (SBA) failed to conduct a good faith investigation of Chapman's protest of the size status of the intended awardee of a Department of Housing and Urban Development (HUD) contract set

aside for small businesses. For the following reasons, plaintiff's protest is DISMISSED.

## I. Background

On August 6, 2003, HUD issued a solicitation for the Management and Marketing of Single Family Homes under Request for Proposals Number R–OPC–22505 seeking proposals for the provision of

> Management and Marketing services to successfully monitor mortgagee compliance with the Department's property conveyance requirements, to successfully manage single family properties owned by, or in the custody of, the Department of Housing and Urban Development (HUD), to successfully market those single family properties which are owned by HUD, and to successfully oversee the sales closing activity, including proper accounting for HUD's sales proceeds.

Complaint (Compl.) ¶ 8; Administrative Record (AR) at 2 (Solicitation). The solicitation sought management and marketing services for multiple geographic regions around the United States, including a region comprising Indiana and Illinois. AR at 17 (Solicitation). The solicitation stated that the award would be made to an eligible small business unless the competition was inadequate among small businesses. *Id.* (Solicitation). HUD determined that the proposal submitted by Chapman was "within the competitive range" for the contract award. *Id.* at 24 (Letter from HUD to Chapman dated 4/2/04).

On July 7, 2004, the contracting officer issued a pre-award notice to Chapman advising it of HUD's intent to award the portion of the contract for management and marketing services in Illinois and Indiana to Harrington, Moran, Barksdale, Inc. (HMBI), the defendant-intervenor in this action. *See id.* at 60 (HUD's Pre–Award Notice of Intent dated 7/7/04). The following day, July 8, 2004, Chapman filed a size protest with SBA challenging HMBI's eligibility for the award based on its affiliation with a large business,

Cathedral Rock, Inc.[1] *Id.* at 28 (Chapman's Size Protest dated 7/8/04).

The procedures for challenging a business concern's eligibility for a small business contract award are set forth in Subpart 19.3 of the FAR, titled "Determination of Small Business Status for Small Business Programs," and Part 121 of Title 13 in the Code of Federal Regulations, titled "Small Business Size Regulations." These regulations permit an offeror to protest the small business representation of another offeror in a specific offer. *See* FAR § 19.302(a) (addressing who may file a protest challenging the small business status of an offeror for "a specific offer"); 13 C.F.R. § 121.1007(a), (b) (providing that only a protest challenging, on specific factual grounds, a "particular procurement" will be acted upon by SBA). To be timely under the regulations, a protest must be received by the contracting officer before the close of the business on the 5th business day after the contracting officer has notified the protester of the identity of the prospective awardee. *See* FAR § 19.302(d)(1); 13 C.F.R. § 121.1004(a)(2). Upon receipt of a protest, the contracting officer shall promptly forward the protest to the proper SBA Government Contracting Area Office. FAR § 19.302(c)(1). Upon making a formal size determination, the SBA Area Office promptly notifies the contracting officer and the protestor of its decision. *See* FAR § 19.302(g)(1); 13 C.F.R. § 121.1009(f).

The regulations provide that an "[a]ward ... made on the basis of [the SBA's] determination ... is final unless it is appealed in accordance with [the regulations] *and* the contracting officer is notified of the appeal before award." FAR § 19.302(g)(2) (emphasis added); *see also* 13 C.F.R. § 121.1009(g)(1) ("A formal size determination becomes effective immediately and remains in full force and effect unless and until reversed by [SBA's Office of Hearings and Appeals (OHA)].") The regulations state that "i[f] an award was made before the time the contracting officer received notice of the appeal, the contract shall be presumed to be

---

1. In its size protest, Chapman alleged that Cathedral Rock, Inc. is the forty-eighth largest operator of long-term care facilities in the nation, has 31 subsidiary corporations, and generates revenue in excess of one hundred million dollars. AR at 28. The maximum revenue permitted under the contract was six million dollars. *See id.* at 90.

valid." FAR § 19.302(g)(2). The regulations are clear that a ruling by SBA's OHA will apply to the "pending acquisition" only if the decision is received by the contracting officer before the contract is awarded. FAR § 19.302(i); *see also* 13 C.F.R. § 121.1009(g)(3) (stating that a decision by SBA's OHA "will apply to the pending procurement or sale if the decision is received before award").[2] Otherwise, a ruling by SBA's OHA received after the award of the contract "shall not apply to that acquisition." FAR § 19.302(i); *see also* 13 C.F.R. § 121.1009(g)(3) ("OHA decisions received after contract award will not apply to that procurement or sale, but will have future effect, unless the contracting officer agrees to apply the OHA decision to the procurement or sale.").

In this case, nearly two weeks after filing a timely size protest with SBA challenging HMBI's eligibility for the HUD contract award, on July 21, 2004, Chapman supplemented its size protest with SBA with evidence to support a new allegation that HMBI had "formed an illegal partnership with Best Assets," a large business and the incumbent HUD management and marketing services contractor "for the states of Atlanta, Georgia and Missouri." *Id.* at 90 (Chapman's Supplement to Size Protest dated 7/21/04). On July 23, 2004, SBA's Area Office in Fort Worth, TX issued its size determination concluding that HMBI was a small business. *Id.* at 144–52 (SBA's Size Determination Decision).

Chapman received SBA's size determination decision on July 26, 2004. Plaintiff's Brief on Jurisdiction and Justiciability (Pl.'s Br.) at 5; Defendant's Brief With Respect to Jurisdiction and Justiciability (Def.'s Br.) at 2. Four days later, on July 30, 2004, HUD awarded the portion of the contract providing management and marketing services in Illinois and Indiana to HMBI. AR at 153–54

(Letter from HUD to Chapman advising of award to HMBI dated 7/30/04). Ten days after the contract award to HMBI and two weeks after it received notice of SBA's Size Determination Decision, on August 9, 2004, Chapman appealed the size determination decision to SBA's Office of Hearings and Appeals (OHA).[3] *Id.* at 132–319 (Chapman's Appeal of Size Determination Decision dated 8/9/04). OHA affirmed SBA's size determination decision and denied Chapman's appeal by a decision of October 7, 2004. *Id.* at 467–74 (SBA's OHA Decision of 10/7/04 affirming size determination).

Chapman filed this action on October 14, 2004. Compl. at 1. Chapman complains that SBA acted arbitrarily and capriciously by failing to consider certain information about HMBI, *id.* ¶¶ 33–37, failing to investigate HMBI's size status, *id.* ¶¶ 38–40, and failing to follow its own regulations, *id.* ¶¶ 41–45. Chapman asks the court to remand the matter to SBA's OHA for a good faith investigation of HMBI's size status. *Id.* at 11.

Further to a telephonic status conference with the parties and the court's Scheduling Order of October 15, 2004, the parties have submitted briefing for the purpose of permitting the court to determine its jurisdiction over and the justiciability of plaintiff's Motion for Preliminary Injunction. The court heard oral argument on the jurisdiction and justiciability issues on November 5, 2004.

## II. Discussion

### A. Standard of Review

Plaintiff has brought this action alleging jurisdiction under the Tucker Act. Compl. ¶ 6. The Tucker Act, as amended by the Administrative Disputes Resolution Act (ADRA), confers jurisdiction on this court

---

2. Section 121.1009(g)(3) of Title 13 of the Code of Federal Regulations was amended recently by the Final Rule published in the Federal Register, 69 Fed.Reg. 29192 (May 21, 2004) (to be codified at 13 C.F.R. pts. 121, 124, 125, and 134) to afford the contracting officer the discretion to apply an SBA OHA decision received after contract award to that procurement. *See* 69 Fed. Reg. at 29207.

3. Following the contract award to HMBI, Chapman also filed a protest before the Government Accountability Office (GAO) challenging the merits of the award. Defendant's Brief With Respect to Jurisdiction and Justiciability at 2 n. 2. The parties advised the court during an informal telephonic status conference on November 17, 2004 that GAO denied plaintiff's protest on November 15, 2004.

to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation *in connection with* a procurement or proposed procurement.

28 U.S.C. § 1491(b)(1) (2000) (emphasis added).

■ A court reviews a bid protest action under the standard set forth in the Administrative Procedure Act (APA), 5 U.S.C. § 706 (2000). *NVT Techs., Inc. v. United States,* 370 F.3d 1153, 1159 (Fed.Cir.2004). The APA provides that an agency's decision is to be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2000). *See Galen Med. Assocs., Inc. v. United States,* 369 F.3d 1324, 1329 (Fed.Cir. 2004) (same); *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1332 (Fed.Cir.2001) (*Impresa* ) (same); *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1057 (Fed.Cir.2000) (same). "[T]he court implements this APA standard by applying the standard as previously interpreted by the district court[ ] in ... *Scanwell [Labs., Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970)]." [4] *Banknote Corp. of Am., Inc. v. United States,* 365 F.3d 1345, 1351 (Fed.Cir.2004).

■ The Federal Circuit has stated that, under the APA standard applied in *Scanwell,* and now under the ADRA, " 'a bid award may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.' " *Id.* (quoting *Impresa,* 238 F.3d at 1332). When challenging a procurement on the ground of a regulatory violation, the protester "must show a clear and prejudicial violation of [the] applicable statutes or regulations." *Id.* (quoting *Impresa,* 238 F.3d at 1333). The protester must also show that "there was a 'substantial chance' [that] it would have received the contract award

absent the alleged error." *Id.* (quoting *Emery Worldwide Airlines, Inc. v. United States,* 264 F.3d 1071, 1086 (Fed.Cir.2001)). Here, Chapman does not allege that decision of the procurement official lacked a rational basis. *See* Transcript of November 5, 2004 Oral Argument (Tr.) at 33 (plaintiff's counsel stating "I don't think she ... did anything incompetent"). Rather, Chapman bases its protest on an alleged violation of "one or more ... regulations *in connection with* a federal procurement." Compl. ¶ 6 (emphasis added) (appearing to quote 28 U.S.C. § 1491(b)(1)).

■ Standing to bring a protest as an "interested party" under the ADRA, *id.* ¶ 7, is " 'limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract.' " *Banknote Corp.,* 365 F.3d at 1352 (quoting *Am. Fed'n of Gov't Employees, AFL–CIO v. United States,* 258 F.3d 1294, 1302 (Fed.Cir.2001)). As an offeror whose proposal was determined to be in the competitive range for the challenged award and whose direct economic interest was affected by the contract award to HMBI, Chapman has standing to bring this action as an interested party.

The court now addresses the threshold issues of whether it has jurisdiction to hear this protest and whether this matter is justiciable. The court then considers whether, in the circumstances of this case, a decision on justiciability in effect constitutes a decision on the merits.

B. Whether the Court Has Jurisdiction to Hear This Case

Plaintiff relies on the language of ADRA permitting an interested party to bring an action challenging "any alleged violation of statute or regulation in connection with a procurement." Compl. ¶ 6 (citing 28 U.S.C. 1491(b)(1)). Plaintiff argues that this court has jurisdiction under ADRA to consider its appeal from SBA's dismissal of plaintiff's size protest as demonstrated by its previous deci-

---

**4.** In *Scanwell,* the circuit court upheld the district court's review of government procurement

decisions under the APA. *See* 424 F.2d at 875.

sions. Pl.'s Br. at 9. Plaintiff contends that this court has in the past "taken jurisdiction to consider ... [certain] decisions by [SBA's] OHA." Pl.'s Br. at 9 (citing *Mark Dunning Indus., Inc. v. United States* (*Mark Dunning II*), 60 Fed.Cl. 687 (2004) (remand to SBA for reconsideration of an Historically Underutilized Business Zone (HUBZone) qualification protest); *Ceres Envtl. Servs., Inc. v. United States*, 52 Fed.Cl. 23 (2002) (whether RFP applies the correct size standard under SBA's regulations); *Stapp Towing, Inc. v. United States*, 34 Fed.Cl. 300 (1995) (pre-ADRA decision addressing the propriety of an SBA certificate of competency)). Plaintiff asserts that the most relevant authority on this jurisdictional issue is found in the *Mark Dunning* cases. The *Mark Dunning* cases [5] were brought by a disappointed bidder alleging the violation of an SBA regulation rather than challenging the decision of the contracting officer for the procuring agency. *See* Tr. at 9.

Defendant does not dispute this court's "jurisdiction to consider determinations of the [SBA] that affect the award of a contract to an interested party." Def.'s Br. at 3 (citing *Mark Dunning II*, 60 Fed.Cl. 687). Defendant agrees that the language of the Tucker Act, specifically the phrase "in connection with," is "sufficiently broad to encompass agency action that is delegated by the [procuring] agency to another agency for purposes of making a[n] [award] determination." Tr. at 57. Defendant argues that the exercise of the court's jurisdiction "is not warranted" here because the relief plaintiff seeks would not, as a matter of law, affect the challenged contract award. Def.'s Br. at 3.

HMBI, the defendant-intervenor in this matter, argues that this court lacks jurisdiction to hear this bid protest action because plaintiff has "allege[d] a violation of [a] statute or regulation in connection with a yet unknown future procurement" and not in connection with "the protested procurement." Intervenor–Defendant's Response to Plain-

tiff's Brief (Intervenor's Br.) at 1–2. HMBI explains that the impact of an SBA size protest and appeal, when filed after a contract award, is not on the current procurement but can only be on a future procurement under the governing FAR regulation. *See id.* at 8–9 (citing FAR § 19.302(i)). The court addresses this argument in its discussion of the justiciability issue. *See* Part II.C *infra.*

HMBI alternatively argues that the court lacks jurisdiction to review matters "entirely beyond the contracting officer's authority." *Id.* at 2. To support its argument, HMBI cites the *Red River Service* case in which the Court of Federal Claims declined to extend Tucker Act jurisdiction to review a SBA decision concerning a protest challenging the selection of a particular North American Industry Classification System code. *Id.* at 10. HMBI relies primarily on the court's reasoning in *Red River Service Corporation v. United States*, 60 Fed.Cl. 532 (2004), *appeal dismissed*, 110 Fed.Appx. 887 (Fed.Cir. Sept. 20, 2004), that jurisdiction under the Tucker Act must be "consistent with congressional rationale for amending the Tucker Act to extend bid protest jurisdiction based on an implied-in-fact contract," with the agency conducting the procurement, *Red River Service*, 60 Fed.Cl. at 538 (quoted in Intervenor's Br. at 10); *see also* Tr. at 62. HMBI asserts that "[s]ize determinations are expressly assigned to SBA and the [procuring agency's] contracting officer has no authority to make such determinations." Intervenor's Br. at 2.

In addressing the jurisdictional issue, the court examines the principal cases on which the parties rely for their respective positions, specifically *Mark Dunning* and *Red River Service*.

In *Mark Dunning II*, this court exercised its jurisdiction to consider a post-award bid protest challenging SBA's denial of a HUBZone status protest in connection with a procurement contract for trash collection and disposal services.[6] 60 Fed.Cl. at 688–89;

---

**5.** References in this decision to *"Mark Dunning"* pertain to the litigation that includes *Mark Dunning Industries, Inc. v. United States*, 60 Fed.Cl. 687 (2004) (*Mark Dunning II*) and *Mark Dunning*

*Industries, Inc. v. United States*, 58 Fed.Cl. 216 (2003) (*Mark Dunning I*).

**6.** As the court noted in *Mark Dunning I*, 58 Fed.Cl. at 217 n. 2, Congress passed the Histori-

*Mark Dunning Indus., Inc. v. United States* (*Mark Dunning I*), 58 Fed.Cl. 216, 217 (2003). The court stated that it had jurisdiction to review post-award bid protests under the Tucker Act, 28 U.S.C. 1491(b)(1). *Mark Dunning II*, 60 Fed.Cl. at 689. The court explained generally that "to succeed in a bid protest action, 'a protestor must prove by a preponderance of the evidence the arbitrary and capricious nature of the Government's actions or the violation of an applicable procurement regulation.'" *Id.* (quoting *Tech. Sys., Inc. v. United States*, 50 Fed.Cl. 216, 222 (2001)).

The court's exercise of jurisdiction in *Mark Dunning II* appears to be premised on the plaintiff's allegation in *Mark Dunning I* that "the procurement procedure used with regard to th[e] contract involved a clear and prejudicial violation of applicable statutes and regulations." *Mark Dunning I*, 58 Fed. Cl. at 220–21. "In particular, [the] plaintiff claim[ed] [in *Mark Dunning I*] that the contracting officer failed to follow regulations concerning the procedure to be followed after a contractor protests the HUBZone status of an apparent successful offeror." *Id.* at 221. The court in *Mark Dunning I* ordered a remand to SBA for decision on plaintiff's HUBZone status protest. *Id.* at 225. On remand, SBA dismissed plaintiff's HUBZone status protest for "lack of specificity" in the protest letter, and SBA's Office of Hearing and Appeals (OHA) subsequently denied plaintiff's appeal of the dismissal. *See Mark Dunning II*, 60 Fed.Cl. at 689. The parties returned to this court in *Mark Dunning II*

to challenge SBA's dismissal of its HUBZone status protest by motions for judgment on the administrative record. *See id.* Without elaboration, the court stated that it possessed jurisdiction to review post-award bid protests under the Tucker Act, 28 U.S.C. § 1491(b)(1). *Id.* The court found that SBA's dismissal of plaintiff's HUBZone status protest was arbitrary and capricious because plaintiff's protest letter "sufficiently set forth: (1) the ground on which [plaintiff] questioned [the contract awardee's] HUBZone status, and (2) the factual allegations that formed the basis for the protest." *Id.* at 692. Because the court in *Mark Dunning II* reviewed a decision made "in connection with" a procurement by an agency other than the procuring agency, 28 U.S.C. § 1491(b)(1), the case lends support for plaintiff's position that an action challenging such decision falls within this court's bid protest jurisdiction.

In *Red River Service*, however, the court reached a different conclusion in a pre-award protest. *See* 60 Fed.Cl. at 535, 538. The case involved an Air Force solicitation for "monthly Operations and Maintenance ... services in support of the [Base Telecommunications System]," consisting of the total telephone service and related equipment for four Air Force bases. *Id.* at 533. Consistent with the FAR and relevant SBA regulations, the contracting officer selected a North American Industry Classification System (NAICS) code for the services to be procured.[7] *See id.* at 533–34. Upon receipt and

cally Underutilized Business Zone Act, Pub.L. No. 105–135, §§ 601–607, 111 Stat. 2592, 2627–36 (codified at 15 U.S.C. § 657a), which established the HUBZone program, in 1997. The court explained that "[t]he program's purpose 'is to a provide Federal contracting assistance for qualified small business concerns located in historically underutilized business zones, in an effort to increase employment opportunities, investment, and economic development in those areas.'" *Mark Dunning I*, 58 Fed.Cl. at 217 n. 2 (quoting 48 C.F.R. § 19.1301(b)).

7. The Office of Management and Budget assigns NAICS codes to various industry sectors. *Red River Serv.*, 60 Fed.Cl. at 534 n. 3. To assure that a fair proportion of government contracts are performed by small businesses in each industry category, SBA specifies the maximum number of employees or maximum annual receipts that

qualify a small business within an individual NAICS code. *Id.* (citing 15 U.S.C. § 637(b)(6) (2000) (duty of SBA "to determine within any industry the concerns, firms, persons, corporations, partnerships, cooperatives, or other business enterprises which are to be designated 'small-business concerns'"); 15 U.S.C. § 644(a) (2000) ("[I]n the interest of assuring that a fair proportion of the total sales of Government property be made to small-business concerns," contract awards may be made to small businesses.); and 13 C.F.R. § 121.101(a) (2003) ("SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for 'small business' concerns. Size standards have been established for types of economic activity, or industry generally under the North American Industry Classification System (NAICS).")).

review of the solicitation, prospective bidder "Red River contacted the Chief of the Contracting Division and Small Business Specialist of [the contracting office issuing the solicitation] and requested that [the contracting] office ... direct the [contracting officer] to change the NAICS code." *Id.* at 534. The contracting officer declined the request by the contracting office, and Red River filed an appeal to SBA's OHA challenging the NAICS code designation by the contracting officer. *Id.* After OHA issued its decision finding that the contracting officer's NAICS code designation was not clearly erroneous, Red River filed a complaint in the Court of Federal Claims alleging " 'a violation of statute or regulation in connection with a procurement.' " *Id.* (citation omitted).

The court in *Red River Service* examined the Federal Circuit's decision in *Cavalier Clothes, Inc. v. United States*, 810 F.2d 1108 (Fed.Cir.1987), in which the Federal Circuit held that the United States Claims Court did not have jurisdiction to enjoin a SBA decision regarding the issuance of a Certificate of Competency because the contracting officer was " 'divested of further discretion' " once SBA acted. *Red River Serv.*, 60 Fed.Cl. at 537 (quoting *Cavalier Clothes*, 810 F.2d at 1110, and citing *Speco Corp. v. United States*, 2 Cl.Ct. 335, 337 (1983)). Referring to the Federal Circuit's statement in *Cavalier Clothes* "that the SBA was not immunized from judicial review," *Red River Service*, 60 Fed.Cl. at 537, the court stated:

> The decision in *Cavalier Clothes* ... completely begs the question of *what court* has jurisdiction to review SBA decisions. The Federal Circuit simply concluded that in light of the Federal Courts Improvement Act of 1982, which provided the United States Claims Court, and ultimately the United States Court of Federal Claims, with injunctive relief prior to the award of a contract, "there is no basis for any inference that Congress intended to exclude the SBA when it later authorized injunctive relief against agencies and departments generally on pre-award contract claims." Jurisdiction, however, cannot be conveyed by congressional inference or silence.

*Red River Service*, 60 Fed.Cl. at 537 (citation omitted). "[F]ind[ing] no statutory authority ... provid[ing] the court with jurisdiction to review final decisions of the SBA, unless the agency is a party to a contract or solicitation at issue," the court concluded that "[t]he proper forum for further adjudication of SBA administrative decisions [would] lie with a United States District Court." *Id.* at 537–38; *cf.* 15 U.S.C. § 634(b)(1) (2004) ("The [SBA] Administrator may sue and be sued ... in any United States district court.").

Here, unlike the court in *Red River Service*, the court is persuaded that the Federal Circuit's pre-ADRA guidance in *Cavalier Clothes* and the language of the Tucker Act, as amended by ADRA, permit the exercise of jurisdiction over this action, as implicitly recognized by the court in *Mark Dunning*. In *Cavalier Clothes*, the Federal Circuit determined that the Claims Court had jurisdiction to entertain a pre-award protest brought by a small business contractor challenging the rejection of its bid to manufacture women's Army coats. 810 F.2d at 1109, 1113. The small-business plaintiff alleged that, notwithstanding SBA's refusal to issue a certificate of competency under 15 U.S.C. § 637,[8] it was the "properly qualified low bidder on the contract" and therefore sought declaratory and injunctive relief from the Claims Court. *Id.* at 1110–11. The Federal Circuit found in *Cavalier Clothes* that "neither the language ... nor the legislative history of § 637 undermines the 'normal presumption in favor of judicial review,' " *id.* at 1112 (quoting *Johnson v. Robison*, 415 U.S. 361, 373–74, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974)), and determined that "nothing either in the language or the legislative history of [15 U.S.C. § 634 (1982), which authorized suits against SBA,][9] sug-

---

8. The statutory provision, 15 U.S.C. § 637(b)(7)(A) (1982), made clear that one of the duties of SBA is "to certify to Government procurement officers ... with respect to all elements of responsibility, including, but not limited to, capability, competency, capacity, credit, integrity, perseverance, and tenacity, of any small business concern ... to receive and perform a specific Government contract." *Cavalier Clothes*, 810 F.2d at 1111 (quoting 15 U.S.C. § 637(b)(7)(A) (1982)).

9. The statutory provision stated, in pertinent part, that:

gests that Congress intended to grant SBA any greater immunity from injunctive relief than that possessed by other governmental agencies," *id.* The Federal Circuit concluded that "there is no basis for any inference that Congress intended to exclude the SBA when it later authorized injunctive relief against government agencies and departments generally on pre-award contract claims." *Id.*

Nor is this court persuaded that any such inference may be made following the 1996 enactment of ADRA which conferred concurrent jurisdiction upon the Court of Federal Claims and the district courts to hear bid protest actions until January 1, 2001, at which time the exclusive jurisdiction to hear bid protest actions would rest with the Court of Federal Claims. *See* Administrative Dispute Resolution Act of 1996, Pub.L. No. 104–320, § 12, 110 Stat. 3870, 3874–76 (1996); *Impresa,* 238 F.3d at 1332 (discussing same). The Tucker Act as amended by ADRA now provides that the Court of Federal Claims "shall have jurisdiction to render judgment on an action by an interested party objecting to ... any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (2000). At the time that the Federal Circuit contemplated the jurisdictional issue in *Cavalier Clothes,* it concluded that the jurisdictional grant under the Tucker Act permitted the Claims Court to hear a pre-award protest premised, in effect, on an alleged violation of statute or regulation by an agency other than the procuring agency "in connection with a procurement." The court believes that the reasoning of the Circuit Court in *Cavalier Clothes* also applies in this analogous post-award bid protest action.

In addressing this jurisdictional question, the court also finds instructive the Federal Circuit's recent guidance in *Fisher v. United States,* 364 F.3d 1372 (Fed.Cir.2004). In that case, the Federal Circuit reviewed a decision of the Court of Federal Claims dismissing a claim for military disability retirement for lack of jurisdiction. *Id.* at 1375–76. Although not in the bid protest context, the Federal Circuit stated that "[t]he process by which a plaintiff undertakes the required jurisdictional showing ordinarily will occur in the context of the initial pleading, a well-pleaded non-frivolous complaint. If the showing meets the test, nothing more need be done to establish the trial court's jurisdiction." *Id.* at 1378.

 Here, Chapman, as an interested party, has brought an action alleging that SBA, a federal agency, has violated "one or more statutes and/or regulations in connection with a federal procurement." Compl. ¶ 6. Chapman specifically alleges that, in contravention of its own regulations concerning procedures for size protests, in particular, 13 C.F.R. §§ 121.1007(b), 121.1009(a), SBA arbitrarily dismissed plaintiff's size protest for plaintiff's failure to use certain language in the protest although the basis for the protest was clear. *See* Compl. ¶¶ 29–31. As a disappointed bidder, plaintiff filed its size protest challenging the eligibility of the awardee of HUD's management and marketing services contract. *Id.* ¶¶ 7, 13. Plaintiff's complaint is a well-pleaded articulation of its "objecti[on] to ... an[ ] alleged violation of [a] statute or regulation in connection with a procurement." 28 U.S.C. § 1491(b)(1). Consistent with the Federal Circuit's guidance in *Fisher,* plaintiff has established the court's jurisdiction. 364 F.3d at 1378 (stating that a plaintiff "establish[es] the trial court's jurisdiction" upon filing "a well-pleaded non-frivolous complaint").

**C. Justiciability: Whether the Court Should Intervene in the Circumstances of This Case**

 Plaintiff argues that, under ADRA, this court " 'may award any relief that [it]

---

In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter, the Administrator [of the Small Business Administration] may—
(1) sue and be sued in any court of record of a State having general jurisdiction, or
in any United States district court, and jurisdiction is conferred upon such district court to

determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property . . . .
*See Cavalier Clothes,* 810 F.2d at 1110 (quoting 15 U.S.C. § 634(b)(1) (1982)).

considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.'" Pl.'s Br. at 11 (quoting 28 U.S.C. § 1491(b)(2)). Plaintiff reasons that "except as to the limitation on monetary damages," the plain language of ADRA "removes any impediment[ ] or limit[ ] to the relief that the [c]ourt may fashion here." *Id.* Plaintiff asserts that, upon finding that the failure of SBA's OHA to consider plaintiff's size protest was arbitrary and capricious, the court "may fashion" relief by "remand[ing] [this action] to OHA for a substantive review" of plaintiff's size protest or by "ruling on the merits of [plaintiff's] protest and issuing an injunction against performance" by the contract awardee. *Id.* (citing *ViroMed Labs., Inc. v. United States,* 62 Fed.Cl. 206, 219 (2004) (vacating contract award on the ground that neither the contract awardee nor the protestor complied with the certification requirement of the solicitation); and *PGBA, LLC v. United States,* 60 Fed.Cl. 196, 222–23 (2004) (awarding costs and bid preparation and proposal costs awarded upon finding prejudicial errors in the bid evaluation process)).

Defendant argues that, in this case, "the [c]ourt cannot supply relief to Chapman because, in light of the procedural posture of its appeal to the SBA, any new determination as to HMBI's status as a small business would not affect the award of the contract to HMBI." Def.'s Br. at 4. Defendant explains that, if the court "lacks the ability to supply relief," the dispute is not justiciable. *Id.* (citing *Mercer v. United States,* 52 Fed.Cl. 718, 723 (2002) (stating that " '[e]ven where a court possesses jurisdiction to hear a claim, it may not do so where the claim presents a nonjusticiable controversy—i.e., the claim is such that the court lacks "ability to supply relief." ' ") (citations omitted)). Defendant contends that "[t]his matter is not justiciable because a decision on the merits would not affect the award of the contract at issue." Def.'s Br. at 4.

HMBI also argues that, because "any judicial relief granted by this [c]ourt will only impact Intervenor–Defendant's size status on future unknown procurements[,] . . . [p]laintiff's Motion for Preliminary Injunction does not present a justiciable controversy." Intervenor's Br. at 13. Quoting *Blacks Law Dictionary,* HMBI asserts that a justiciable controversy refers "[t]o real and substantial controversy which is appropriate for judicial determination, as distinguished from dispute or difference of contingent, hypothetical or abstract character." Intervenor's Br. at 12 (quoting *Blacks Law Dictionary* 777 (5th ed.1979)).

In challenging the justiciability of plaintiff's action, defendant and HMBI rely on Federal Acquisition Regulation (FAR) Subpart 19.3 which governs the procedures for an interested party to challenge a contract awardee's self-representation of its small business status.[10] *See* Def.'s Br. at 4–6; Intervenor's Br. at 13–15. FAR § 19.302 provides that a contract award is presumed to be valid if the award was made before an appeal is filed with SBA's OHA. FAR § 19.302(g)(2) ("If an award was made before the time the contracting officer received notice of the appeal, the contract shall be presumed to be valid."). Section 19.302 of the FAR also provides that a ruling by SBA's Office of Hearing and Appeals (OHA) that is received after a contract award does not affect the awardee's size status for the challenged procurement but rather applies to future procurements. FAR § 19.302(i) (An "SBA ruling[ ] received after award shall not apply to that acquisition.").

In this case, the contracting officer issued a pre-award notice to Chapman on July 7, 2004 advising of HUD's intent to award the portion of the contract for management and marketing services in Illinois and Indiana to HMBI. AR at 60 (HUD's Preaward Notice of Intent addressed to Chapman dated 7/7/04). Chapman filed a timely size protest the next day, July 8, 2004, with SBA challenging HMBI's eligibility for the award. *Id.* at 28 (Chapman's Size Protest dated 7/8/04). On

---

**10.** Defendant also refers to Title 13, Part 121 of the Code of Federal Regulations (titled "Small Business Size Regulations"), which also address- es the procedures for an interested party to challenge a contract awardee's self-representation of its small business status. Def.'s Br. at 4.

July 23, 2004, SBA's Area Office in Fort Worth, TX issued its size determination finding that HMBI was a small business. *Id.* at 144–52 (SBA's Size Determination Decision). On July 30, 2004, HUD awarded the contract to HMBI. *Id.* at 153–54 (Letter from HUD to Chapman advising of award to HMBI dated 7/30/04). Although Chapman acknowledges that it received SBA's size determination decision on July 26, 2004, *see* Pl.'s Br. at 5, plaintiff did not file its appeal of SBA's size determination decision to SBA's Office of Hearings and Appeals (OHA) until August 9, 2004. AR at 132–319 (Chapman's Appeal of Size Determination Decision dated 8/9/04).

The procurement process for this HUD contract involved an award to HMBI based on a size determination by SBA's Area Office. The contracting officer's reliance on SBA's size determination and the subsequent award of contract are presumed to be valid under the FAR. FAR § 19.302(g)(2). The FAR specifically directs that, because Chapman did not file its appeal with OHA until ten days after the contract award, any decision reached by SBA's OHA would not affect the award of the contract. *See* FAR § 19.302(g)(2); *see also Mid–West Constr., Ltd. v. United States*, 181 Ct.Cl. 774, 387 F.2d 957, 963 (1967) ("It is true that further SBA proceedings, once the contracting officer makes an award pursuant to authority granted by this provision of the regulations, would have no effect on that particular contract. But the size determination can influence further contracts with the concern whose status is questioned.").[11] The FAR also provides that, based on the timing of Chapman's appeal, a ruling by OHA received after the contract award date would affect prospective procurements only. FAR § 19.302(g)(2). By failing to appeal promptly

the decision of SBA Area Office, plaintiff has forfeited its opportunity to affect the current contract award under the applicable regulations. Because plaintiff did not file its appeal prior to the contract award and OHA did not issue a decision before HUD awarded HMBI the contract, the award of this contract is unchallengeable on SBA size determination grounds. *See* FAR § 19.302(g)(2). Because the court is unable to supply the relief plaintiff seeks in its motion for preliminary injunction, the court finds that plaintiff's claim is not justiciable. *See Mercer*, 52 Fed.Cl. at 723.

D. Whether a Finding of Non–Justiciability in This Case Is, in Effect, a Determination on the Merits

■ Based on the particular procedural circumstances of this case, the court's finding of non-justiciability is also, in effect, a finding on the merits because plaintiff has failed to show a "clear and prejudicial violation of [the] applicable statutes or regulations" that would merit relief under the standard of review set forth in *Impresa*, 238 F.3d at 1333, and recently restated in *Banknote Corporation*, 365 F.3d at 1351.

While acknowledging that its appeal to OHA was filed after the contracting officer's award of the contract to HMBI, *see* Plaintiff's Reply Brief on Brief Jurisdiction and Justiciability (Pl.'s Reply) at 3, Chapman argued that, prior to the issuance of the GAO decision denying its protest, its size appeal to SBA's OHA was not moot under the applicable law because the performance of the awarded contract had been stayed, *id.* (citing *Olgoonik Logistics LLC*, SBA No. SIZ–4518, 2002 WL 31844941, at 4 (Nov. 4, 2002) (stating that OHA's "precedent requires that an

---

11. Plaintiff in *Mid–West* filed suit in this court after the contracting officer canceled its award of a road construction contract with the Department of Agriculture based on a determination by the SBA Size Appeals Board that it was not an eligible small business concern as required by the invitation to bid. 387 F.2d at 958–59. The issue before the Court of Claims was "whether the contracting officer was authorized, in the circumstances, to make the award to plaintiff even though the company was not truly a 'small business.'" *Id.* at 959. Examining the Federal Procurement Regulations and the Small Business Administration Regulations "dealing specifically with the procedures for determining small business status and the effect of those determinations (or lack thereof) on federal procurement activity" *id.*, the Court of Claims concluded that the award to Mid–West was proper and that the post-award cancellation of the contract improperly prevented plaintiff's contract performance, *id.* at 966. Although the Court of Claims' decision in *Mid–West* relied on Federal Procurement Regulations that have been substantially amended, the decision provides useful analytical guidance.

appeal raising contract-specific issues [like a size determination], after the procuring agency has awarded the contract, must be dismissed as moot" unless the contracting officer has issued a stop work order staying the award); and *KIRA, Inc.*, SBA No. SIZ–4360, 1999 WL 388192 (May 21, 1999) (noting the "general rule that, where an appeal [to OHA] raises contract-specific issues and the contract has been awarded, the appeal becomes moot" except when the contracting officer issues a stop-work order)). The court is not persuaded that the cited authorities apply in this case because the contracting officer here has not issued a stop-work order and because it is not clear in this circumstance that the legal effect of an automatic stay imposed by GAO protest proceedings, *see* 31 U.S.C. § 3553 (2004) (addressing the effect on a procurement contract pending the issuance of a decision on a protest), is equivalent to a contracting officer's election to issue a stop-work order. Nevertheless, plaintiff's argument on this point is now moot because the GAO has denied plaintiff's protest and performance of the contract award is no longer stayed. *See* n. 3, *supra.*

■ Chapman's ability to challenge the current contract award is not improved by the recent amendments to SBA's regulations published in the Federal Register as the Small Business Size Regulations, 69 Fed. Reg. 29192 (May 21, 2004) (to be codified at 13 C.F.R. pts. 121, 124, 125, and 134). Of particular interest in this case is the amendment to 13 C.F.R. § 121.1009(g), which provides:

> If the formal size determination is appealed to OHA, the OHA decision on appeal will apply to the pending procurement or sale if the decision is received before award. OHA decisions received after contract award will not apply to that procurement or sale, but will have future effect, unless the contracting officer agrees to apply the OHA decision to the procurement or sale.

69 Fed.Reg. at 29207. Moreover, during oral argument, defendant asserted that, "[a]lthough [under the new rule] the contracting

officer has discretion after the date of contract award to listen to OHA and, if he or she desires, to terminate the contract for convenience," such circumstance is beyond the area of procurement but falls instead within the scope of contract performance. Tr. at 51. The court agrees. Because the HUD contract is presumed valid as awarded and no decision of OHA issued after plaintiff's failure to file a prompt appeal changes that result, an election by the contracting officer to exercise her discretion and apply the OHA decision to the current contract is beyond the scope of the court's bid protest jurisdiction. *See Mid–West Constr.*, 387 F.2d at 958 (finding under the then-applicable regulations that the contracting officer abused his discretion when, upon issuance of a decision by the SBA Size Appeals Board that the successful bidder was not a small business concern, as required by the contract, the contracting officer canceled the contract as "an erroneous award.").

Because it is undisputed here that plaintiff did not file its appeal prior to the contract award and it is undisputed that OHA did not issue a decision before HUD awarded HMBI the contract, Chapman cannot establish that the procurement procedure for this HUD contract involved a "clear and prejudicial violation" of the regulations governing the appeal of its SBA size status protest. *See Banknote Corp.*, 365 F.3d at 1351; *Impresa*, 238 F.3d at 1333. Because Chapman has failed to establish that the procurement procedure for this HUD contract involved a "clear and prejudicial violation" of the regulations governing the appeal of its SBA size status protest HUD, plaintiff is not entitled to relief under ADRA, and the award of the HUD contract is presumptively valid under the applicable regulations for challenging an SBA size determination, *see* FAR § 19.302(g)(2). Moreover, because Chapman has failed to establish that the procurement procedure for this HUD contract involved a "clear and prejudicial violation" of the regulations governing the appeal of its SBA size status protest HUD, the court does not reach the further issue of whether OHA's determination that HMBI is an eligible small busi-

 

ness concern was itself arbitrary or capricious.

III. Conclusion

For the foregoing reasons, plaintiff's protest is DISMISSED with prejudice. The Clerk of the Court shall enter judgment for defendant. No costs.

IT IS SO ORDERED.